[Cite as *Miller v. Miller*, 2021-Ohio-307.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

KAREN MICHAEL (F.K.A. MILLER),    :

       Plaintiff-Appellee/        :
       Cross-Appellant,               No. 109121

                               :

   v.

                               :

DAVID MILLER,

                               :

       Defendant-Appellee,

                               :

[Appeal by Cody Miller, Third-Party     :
Appellant/Cross-Appellee.]

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 4, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-13-349594

---

### *Appearances:*

Weston Hurd L.L.P., and Scott J. Orille, *for appellant/cross-appellee.*

John V. Heutsche Co., L.P.A., and John V. Heutsche, *for appellee/cross-appellant.*

ANITA LASTER MAYS, J.:

## I. Introduction

{¶ 1} Third-party appellant/cross-appellee Cody Miller ("Cody") is the adult son of plaintiff-appellee and cross-appellant Karen Michael formerly f.k.a. Karen Miller ("Karen") and Karen's former spouse defendant-appellee David Miller ("David"). This case arises from the divorce of Karen and David initiated by Karen in November 2013. The parties were married for 22 years at the time of their divorce journalized on January 12, 2015. Cody was approximately 20 years old at that time.

{¶ 2} The current issue on direct appeal is the trial court's postdecree determination of the scope of a lien that secures support payments pursuant to the separation agreement. Karen's cross-appeal advances that the transfer of certain assets from David to Cody requires that Cody be held personally liable for the nonpayment of spousal support by David.

## II. Background

{¶ 3} David's father and Cody's grandfather, founded RAM Sensors, Inc. ("RAM Sensors"). In 2009, the grandfather gifted 50 percent of the shares of RAM Sensors to David and 50 percent to then 15-year-old Cody.

{¶ 4} There have been numerous filings in this case regarding property division and support. For efficiency, we extract additional background information from *Miller v. Miller*, 2019-Ohio-1886, 135 N.E.3d 1271 (8th Dist.) ("*Miller I*"). In that case, Karen appealed the "trial court's denial of her motion to intervene" and "to vacate judgment" in *Cody A. Miller, et al. v. David Miller*, Cuyahoga C.P. No. CV-

15-854301. Cody and RAM Sensors sued David for various counts including misappropriation of funds and requested a "declaratory judgment regarding the parties' rights obligations, and ownership interests in RAM [Sensors]." *Id.* at ¶ 7.

**{¶ 5}** "According to Cody * * * Karen urged Cody to file" suit against David in *Miller I* for stealing funds from Cody and "mismanaging and attempting to destroy RAM Sensors so that he would not have any assets with which to pay Karen spousal support." *Miller I* at ¶ 6. Faced with claims of "total compensatory damages against David in favor of Cody in the amount of $2,874,437.56, and in favor of RAM Sensors in the amount of $3,554,891.00, plus attorney fees and costs," settlement negotiations ensued.

**{¶ 6}** During Karen's attempted intervention, Karen stated that in January 2017, David and Karen alleged "entered into a second agreed judgment entry in the divorce case * * * for spousal support, attorney fees, and travel expenses in the amount of $119,907.18."

> David was also required to execute any documents "necessary to secure funds and/or payment as to subject spousal support obligation owed to [Karen], including * * * assignment of [David's] interest in any and all corporate distributions from RAM Sensors, a new promissory note, cognovit note, and stock pledge agreement" concerning David's 50 percent of RAM Sensors' stock. Karen maintains that this second agreement secured the current support obligations.

*Miller I* at ¶ 9. "Both Cody and David deny Karen's claim, and there is no evidence in the record that the parties executed any new documents establishing the alleged new lien on the current support obligation." *Id.*

**{¶ 7}** In April 2017, David and Cody reached a settlement agreement in *Miller I*:

> David consented to judgment in the case, the judgment being stayed, and the judgment being deemed satisfied upon the surrender of David's stock in RAM Sensors to Cody and the payment of certain life insurance proceeds to be received by David. The settlement agreement stated, in part, that *David is the true and lawful owner of David's 50 percent stock and he has not sold, transferred, or otherwise encumbered the stock "except pursuant to the certain stock pledge agreement provided in favor of * * * Karen."* Adopting the settlement agreement, the court granted a permanent injunction in favor of Cody and RAM Sensors, entered judgment in favor of Cody for $2,874,437.56, and ordered David to surrender and convey to Cody all of his interest in RAM Sensors as partial satisfaction of the judgment.

(Emphasis added.) *Id.* at ¶ 10.

**{¶ 8}** Subsequently,

> On May 4, 2017, Karen filed a "motion to transfer [David's] 50% corporate stock * * *" and a motion for declaratory judgment in the domestic relations court, asking for the court (1) to find that David had assigned his interest in his 50 percent RAM Sensors stock to Karen at the time of the divorce and the stock pledge agreement remains in full force and effect, (2) to find that David's transfer of stock to Cody in partial satisfaction of the judgment in the general division common pleas case was an illegal transfer, and (3) to effectuate the transfer of his stock to Karen due to his wrongful transfer and his failure to pay current spousal support. Cody filed a motion to intervene in the domestic relations case to file a motion to dismiss, arguing that Karen's motion was not properly before the court because Karen's interest in RAM Sensors stock is a lien to secure the debt David will owe in 2034, and if David misses a current support obligation, the 2034 support obligation does not immediately become due and owing. Cody further argued that Karen cannot foreclose on the RAM Sensors stock because Cody is owner of all RAM Sensors stock, yet he was not a party to Karen's domestic relations action.

> After Karen filed the motions in domestic relations court, counsel for Cody and RAM Sensors engaged Karen in settlement negotiations. Cody maintained that he received David's stock in partial satisfaction of the judgment against David subject to Karen's lien. He stated that he

fully intended to protect and preserve his mother's lien and that the transfer of David's stock to Cody was expressly made subject to Karen's stock pledge agreement. According to Karen, because none of the purported settlement offers duplicated Karen's rights under the divorce decree, settlement negotiations failed.

On February 23, 2018, Karen voluntarily dismissed (withdrew) [without prejudice] her domestic relations motions, and on March 21, 2018, nearly one year after the final agreed judgment in the underlying matter in the general division court, Karen filed a motion to intervene and motion to vacate the agreed judgment entry in the underlying action. Cody and RAM Sensors opposed Karen's motion.  On May 17, 2018, the trial court denied Karen's motion to intervene, finding the motion untimely. The court also concluded that it had subject matter jurisdiction over the plaintiffs' claims and, therefore, the agreed judgment entry was not void. Karen then filed a separate motion to vacate, which the court also denied.

*Miller,* 2019-Ohio-1886, 135 N.E.3d 1271, at ¶ 11-13 (8th Dist.).

{¶ 9} This court affirmed the denial of Karen's intervention for reasons that included the motion was untimely and Karen's abandonment of the alternative remedy available through the 2017 motion for declaratory judgment filed in the domestic relations court.  We also explained that Karen's interest in the RAM Sensors stock was not impaired while prejudice to the parties, if intervention was allowed, would be substantial.  *Id.* at ¶ 44.

David executed a cognovit note for the $450,000, which was secured by a stock pledge agreement on January 22, 2015.  The pledge agreement provided that as security for payment of the $450,000 to Karen under the note, David pledged all of the equity interest he held in RAM Sensors, which was 50 percent of RAM Sensors' stock. The pledge agreement further provided that as long as David is not in default for the principal amount owed in the cognovit note of $450,000, David "shall have the right to exercise all rights, powers and privileges" as the owner of the RAM [Sensors] stock. Only if David fails to pay the principal of the $450,000 owed per the cognovit note can Karen have the right to (a) cause David's ownership interest in the RAM

[Sensors] stock to be registered in her name, or (b) sell David's interest in the RAM [Sensors] stock at a public or private sale.

After executing the stock pledge agreement, Karen recorded a UCC financing statement on September 23, 2016, with the Ohio Secretary of State, which provided as follows:

Pursuant to the terms of a certain agreement between the Debtor [David Miller] and Secured Party [Karen Miller] entitled "Pledge Agreement," dated January 22, 2015, the security interest described herein is the first position lien on all of Debtor's right, title, and interest in and to Debtor's equity interest in RAM Sensors, an Ohio Subchapter S corporation, including all classes of stock whether certificated or uncertificated.

*Miller I* at ¶ 4-5.

**{¶ 10}** Also in *Miller I*, Karen argued that "the conveyance of David's interest in the stock as partial satisfaction of the judgment was illegal." This court disagreed.

Karen's interest in David's share of the RAM Sensors stock, however, is a lien that becomes due in the future; it is not a present interest in ownership of the stock. As part of the divorce settlement, David agreed to pay Karen $450,000 in additional support beginning December 2034. He then executed a cognovit note in the amount of $450,000 and secured it with a lien on his share of RAM Sensors stock, which was perfected by a stock pledge agreement and recorded with the Ohio Secretary of State. And the record shows that the transfer of David's 50 percent share to Cody was made subject to Karen's interest. Karen's interest in the stock, as a secured creditor, is therefore preserved. The evidence does not support Karen's argument that documents were executed entitling her to immediate transfer of David's stock for satisfaction of David's current support indebtedness, i.e., a new stock agreement, cognovit note, or UCC statement. * * *

The underlying action is a complaint for money damages, declaratory relief, and injunctive relief against David for David's theft or misappropriation of funds belonging to Cody and RAM Sensors. Karen's purported interest in the action is that of a lienholder — she has a lien on David's share of RAM Sensors stock that was transferred to Cody in partial satisfaction of the money judgment. Karen's interest in the stock becomes due in 2034, and the record establishes, through the settlement agreement and Cody's affidavit, that Cody takes David's

stock subject to the lien created by the stock pledge agreement between Karen and David. The underlying action did not seek to foreclose or extinguish Karen's lien. And Karen fails to demonstrate how the disposition of the underlying action in her absence may impair or impede her ability to protect this interest.

*Id.* at ¶ 32, 36.

## III. Instant Case

{¶ 11} On January 9, 2019, Karen filed a complaint for declaratory judgment and other equitable relief in the instant case. Karen challenged the interpretation of the divorce decree and requested a declaration:

> That David's ownership of shares in RAM Sensors was ordered assigned and pledged to Karen and secures all David's obligations under the January 12, 2015 Decree including the monthly and quarterly payments recited in the decree and in the January 24, 2017, Agreed Judgment entry.
>
> That Karen's security and lien over David's RAM [Sensors] stock is not limited to the $450,000 Note payable in 2034 but secures all his obligations to her.
>
> That her right and interest in David's RAM [Sensors] stock is marital property.
>
> That Cody and David must convey to Karen the shares of RAM [Sensors] he acquired from David. [Sic.]
>
> That Cody be required to pay to Karen the monthly support payments due from David since April 13, 2017, while crediting any payments David paid.
>
> An award of her attorney fees from Cody and David.

Journal entry No. 109812564, p. 2 (Aug. 5, 2019).

{¶ 12} Cody answered and counterclaimed for a declaration regarding:

> The respective ownership and lien interests in RAM Sensors, the assets of RAM Sensors, and the stock of RAM Sensors.

Third-party obligations and liabilities for David Miller's spousal support and other obligations arising from the divorce decree.

Reducing or eliminating the spousal support due and owing to [Karen].

*Id.*

**{¶ 13}** The parties subsequently moved for summary judgment. The August 5, 2019 order of the trial court subsequently incorporated into the September 25, 2019 order confirmed that the RAM Sensors stock gifted to David by his father was not marital property under R.C. 3105.171 and that:

> The Separation Agreement requires David to make periodic spousal support payments of $15,000 per month for 20 years; then quarterly payments of $18,750 for 6 years. It is undisputed that David executed a cognovit note in favor of Karen in the amount of $450,000 — the aggregate of the quarterly payments that commence in 2034. The Cognovit Note is secured by a Pledge Agreement and separate Stock Pledge Agreement. These financial documents have been recorded. Karen has a perfected security interest, in the amount of $450,000, in the shares of RAM [Sensors] stock gifted by Ron to David and later transferred from David to Cody.

Journal entry No. 109812564, p. 4 (Aug. 5, 2019).

**{¶ 14}** Karen argued that her security interest in the RAM Sensors stock also extends to the monthly support payments to be paid from 2014 to 2034. Applying contract interpretation principles to the divorce decree, the trial court determined that the parties expressly intended "that David would execute a cognovit note and stock pledge to secure the 240 monthly support payments, as well as the later quarterly support payments." *Id.* at p. 5.

**{¶ 15}** The trial court determined that Karen holds a perfected lien on the RAM Sensors shares transferred to Cody for the 2034 quarterly payments of

$450,000.  In addition, the trial court found that Karen holds an equitable lien in the 2014 to 2034 monthly payments and for the $10,000 in legal fees.

{¶ 16} The trial court explained the "operative language of the Separation Agreement provides that":

> Husband shall secure his obligations by assigning to Wife his interest in RAM Sensors, Inc. to secure the payments due to Wife.  Husband shall execute a Cognovit Note and stock pledge to secure the payments * * *.
>
> The parties consistently used the plural: obligations, payments.  The plain meaning is that this clause applies to more than one-obligation, more than one payment.  The Separation Agreement provides for three payments by David to Karen: the monthly spousal support payments (Section 3(B)); the quarterly spousal support payments (Section 3(D)); and $10,000 spousal support towards legal fees (Section 10).  It is illogical, and contrary to the ordinary meaning of the language used, to conclude that the plural "payments" applies only to the quarterly spousal support payments in Section 3(D) and not to the spousal support payments set forth in Sections 3(B) and 10.
>
> The Court finds that the express intent of the parties was that David would execute a cognovit note and stock pledge to secure the 240 monthly support payments, as well as the later quarterly support payments.

(Fn. omitted.)  *Id.* at p. 6-7.

{¶ 17} The trial court determined that Karen holds an equitable lien.

> Here there is an obligation — the spousal support; an identifiable res — the RAM [Sensors] stock owned by David; and, an express agreement that the stock would serve as collateral on the spousal support obligation.  The Court finds that Karen holds an equitable lien on the RAM [Sensors] stock as to the monthly spousal support payments.
>
> An equitable lien, however, does not give the lienholder a possessory interest in the property. 51 American Jurisprudence 2d, Liens, Section 31, at 118 (2011).  Consequently, Karen is not entitled to a declaration or order that Cody convey the RAM [Sensors] stock to her.

(Fn. omitted.)  Journal entry No. 109812564, at p. 7 (Aug. 5, 2019).

{¶ 18} The trial court determined that the "failure to perfect the lien as to the monthly payments * * * is based on parol evidence — documents executed after the Separation Agreement."  *Id.* at fn. 3. "Karen likewise proffers parol evidence: the affidavit of her former attorney. Because the Separation Agreement is unambiguous, neither parties' parol evidence is considered."  *Id.*

{¶ 19} The court added by notation:

> Karen may face a dilemma:  shares of stock of a corporation may be of limited marketability. Forcing sale now would extinguish the lien, leaving future support obligations unsecured; requiring a buyer to take the shares subject to lien would likely further reduce marketability.

*Id.* at p. 8, fn. 4.

{¶ 20} Finally, the trial court elaborated on the equitable lien:

> Courts have defined "equitable lien" as "[an] express executory agreement in writing whereby a contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated which is enforceable against the property in the hands not only of the original contractor, but of his purchasers or encumbrancers with notice.  * * * The doctrine itself is clearly an application of the maxim 'equity regards as done that which ought to be done.'" The salient features of an equitable lien, therefore, require (1) a debt, duty or obligation; (2) an identifiable res; and (3) an express or implied intent for that the property serve as security for the payment of a debt or obligation.  (Citations omitted.)

Journal entry No. 109812564, at p. 7 (Aug. 5, 2019), quoting *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 34 (8th Dist.).

{¶ 21} In a September 20, 2019 judgment entry, the trial court stated:

This matter is before the Court on plaintiff Karen Michael's Preliminary Objections to June 6, 2019 Magistrate Decision (filed June 17, 2019); Plaintiff's Supplemental Objections to the June 6, 2019 Magistrate Decision (filed July 22, 2019); defendant David Miller's Response in Opposition (filed August 6, 2019); and, new-party defendant Cody Miller's Responsive Objection to the Magistrate's Decision (filed June 20, 2019).

Journal entry No. 110490460, p. 1 (Sept. 20, 2019).

{¶ 22} In pertinent part, the trial court determined:

2. The Magistrate erred in finding the past due amount of support was $159,594.59 as of March 14, 2018 when evidence was admitted demonstrated [sic] defendant [sic] owed $298,417.59 as of April 25, 2019.

The evidence shows that both numbers are correct: the arrearage on March 14, 2018 (the date of Plaintiff's show cause motion) was $159,594.59. By the time of trial in 2019, the arrearage was $298,417.59. The Court finds that the arrearage as of commencement of trial was $298,417.59.

Plaintiff's second objection is sustained.

*Id.*

{¶ 23} Also informational regarding the instant case,

3. The Magistrate erred in failing to address Plaintiff's request for an order requiring third-party defendant Cody Miller, to immediately transfer defendant David Miller's pledge shares to Plaintiff.

Plaintiff offers no legal authority for the proposition that a motion to show cause against David Miller permits the Court to affirmatively enjoin Cody Miller to act.

It is undisputed that Defendant pledged certain stock to secure his spousal support obligations to Plaintiff. It is also undisputed that Defendant transferred that stock to Cody. This Court has previously held that Cody took the stock subject to Plaintiff's equitable lien. However, as the Court has previously pointed out: an equitable lien

does not give the lienholder a possessory interest in the property. 51 American Jurisprudence 2d, Liens. Section 31. at 118 (2011).

Plaintiff's third objection is overruled.

*Id.* at p. 2.

{¶ 24} In the September 25, 2019 judgment entry the trial court addressed the remaining issue in the case. Specifically, the personal liability of Cody to Karen for the spousal support payments:

> Plaintiff advances two theories why her son, Cody, is personally liable to her for David's (her former spouse and Cody's father) court-ordered spousal support payments: (1) that the transfer of David's shares in RAM Sensors, Inc., to Cody was a fraudulent conveyance; and, (2) that this Court's June 24, 2015 withholding or deduction notice to RAM Sensors, Inc., obligates the company, and Cody as present owner of the company, to Plaintiff.

Journal entry No. 110540153, p. 1 (Sept. 25, 2019).

{¶ 25} "'The record shows that the transfer of David's 50 percent share to Cody was made subject to Karen's interest. Karen's interest in the stock, as a secured creditor, is therefore preserved.'" Journal entry No. 110540153, p. 2 (Sept. 25, 2019), quoting *Miller*, 2019-Ohio-1886, 135 N.E.3d 1271, at ¶ 32 (8th Dist.).

{¶ 26} Thus,

> [t]he Court finds that the transfer of stock in RAM Sensors, Inc. from David to Cody was not a fraudulent conveyance.

> The only "authority" Plaintiff puts forward for the proposition that RAM Sensors, Inc. and Cody as owner of that company are personally liable to her for spousal support is her own testimony that "Mr. Miller paid his support from RAM Sensors," and this Court's withholding order to RAM Sensors, Inc., which was then Defendant's employer.

> The applicable statutes require an employer to withhold support "from the obligor's income;" and require a financial institution to withhold

support "from the obligor's account." *E.g.*, R.C. 3121.03(A)(l)(a) and (B)(l)(a). Nothing in the statute imposes any obligation on the employer or financial institution to pay support from its own funds.

Plaintiff's argument is untenable.

Both parties have prayed for an award of attorney fees. It is axiomatic that there are no automatic attorney fees in domestic relations cases. *Burkons v. Beugen*, 8th Dist. Cuyahoga No. 107696, 2019-Ohio-2232, 14. Here, each party has achieved some success, however, neither was clearly prevailing. Consequently, the Court will not award attorney fees.

Journal entry No. 110540153, p. 2 (Sept. 25, 2019).

{¶ 27} The trial court's order: (1) incorporated the August 5, 2019 judgment entry that resolved the other pending claims; (2) granted Cody's motion for summary judgment; (3) denied Karen's motion for summary judgment; and (4) granted judgment on the complaint for declaratory judgment and other equitable relief as well as on the counterclaim in favor of Cody. *Id.* at p. 2-3.

{¶ 28} Cody appeals. Karen cross-appeals. We affirm the trial court's judgment in both appeals.

## IV. Assignments of Error

{¶ 29} Cody presents five assignments of error on appeal.

I.     The trial court erred in entering summary judgment in favor of Karen and denying the entry of summary judgment in favor of Cody by finding that the plain, unambiguous language of the divorce decree created an equitable lien on the RAM Sensors stock to secure the entire spousal support obligation.

II.     The trial court erred when interpreting the divorce decree by failing to consider all contract documents that are part of the same transaction.

III.     The trial court erred in creating an equitable lien securing the entire spousal support obligation when the UCC financing statement

recorded by Karen demonstrates that the lien contemplated by the divorce decree is to secure the $450,000 spousal support obligations.

IV.     The trial court erred in creating an equitable lien on the RAM Sensors Stock when the parties created an actual, express lien that was properly perfected.

V.      The trial court's creation of an equitable lien to secure all spousal support obligations violates Ohio law.

## V.   Summary Judgment Standard of Review

{¶ 30} This court's review of summary judgment is de novo, using the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment may only be granted when the following is established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and the conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in its favor. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978); Civ.R. 56(E).

{¶ 31} The party that moves for summary judgment bears the initial burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. Once the moving party satisfies that burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E).

## VI. Discussion

### A. Contract Interpretation

{¶ 32} We combine the first three assigned errors for response. There is no dispute that Karen has a perfected lien of 50 percent of the RAM Sensors stock for the additional spousal support of $450,000. Cody denies that the plain language of the divorce decree embodies the parties' intent that the $450,000 cognovit note and stock pledge secure the 2034 quarterly payments that total $450,000, as well as the entire $3.6 million of monthly spousal support payments.

{¶ 33} The trial court declared that Karen holds a perfected lien on the RAM Sensors shares transferred to Cody for the 2034 quarterly payments of $450,000. However, the trial court also held that Karen holds an equitable lien on the RAM Sensors shares for the monthly spousal support payments.[1]

{¶ 34} "The same rules of construction apply to separation agreements and settlement agreements as to any other contract." (Citations omitted.) *Vail v. String*, 8th Dist. Cuyahoga No. 107112, 2019-Ohio-984, ¶ 26. "Where contract language is unambiguous, the contract must be enforced as written." *Id.* at 27. "[T]he court may look only to the plain language of the parties' agreement to determine the parties' rights and obligations." *Id.*

---

[1] This court's reading of the January 24, 2017 Agreed Judgment Entry confirms our interpretation. The entry settles outstanding postdecree property and spousal support issues including payments and timing. It also provides that David is to secure the payments by assignment of his interest in RAM Sensors distributions and a new promissory note, cognovit note, and stock pledge agreement for the RAM Sensors shares. Journal entry No. 97336215. However, the shares were transferred to Cody in the then pending *Miller I* case subject to Karen's secured lien within weeks of the agreed entry.

{¶ 35} "The determination of whether an ambiguity exists, whether a writing is a complete integration and the meaning of unambiguous contract language are all questions of law, which we review de novo. (Citations omitted.)" *Id.* at ¶ 30. In addition,

> the words used by the parties are to be read in context and given their plain, usual and ordinary meaning "'unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents'" of the agreement.

*Id.* at ¶ 25, quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus; *Carroll Weir Funeral Home v. Miller*, 2 Ohio St.2d 189, 192, 207 N.E.2d 747 (1965).

{¶ 36} The trial court relied on part of Section 2 of the separation agreement that governs the division of property. Section 2.E. addresses business interests that includes a portion of the following paragraph:

> Husband has an interest in Miller Wire & Cable Co. Inc. and RAM Sensors, Inc. In consideration of the terms of this Agreement and the specific terms set forth hereinbelow. Wife relinquishes all right[,] title[,] and interest she may have to the assets and income of both entities except that Husband shall secure his obligations by assigning to Wife his interest in RAM Sensors, Inc. to secure the payments due to Wife. Husband shall execute a Cognovit Note and stock pledge to secure the payments and he shall not encumber, transfer, assign, pledge or otherwise or alienate his interest in RAM Sensors, Inc. without Wife's prior written authorization until he has satisfied his obligations herein.

Separation agreement (Oct. 16, 2014).

{¶ 37} The trial court concluded that the use of "the plural: obligations, payments" unambiguously in the agreement means that the "clause applies to more than one-obligation, more than one payment." The court determined that the

agreement covers three payments, "the monthly spousal support payments (Section 3(B)); the quarterly spousal support payments (Section 3(D)); and $10,000 spousal support towards legal fees (Section 10)." *Id.* "It is illogical, and contrary to the ordinary meaning of the language used, to conclude that the plural 'payments' applies only to the quarterly spousal support payments in Section 3(D) and not to the spousal support payments set forth in Sections 3(B) and 10 [legal fees]." *Id.*

{¶ 38} The payments referenced by the trial court are set forth under Section 3 entitled "separate maintenance and spousal support." Section 3.1 provides that husband is to pay all amounts due to wife under the temporary support order by November 23, 2014.

{¶ 39} The Section 3.B. monthly obligation for Karen's "alimony and * * * separate maintenance and support" is for $15,000 per month beginning on December 1, 2014, and continues for 20 years. However, the payments cease upon husband or wife's death, except as otherwise provided in Section 3, or upon the expiration of 20 years. Pertinent here, the agreement includes *"[t]he parties acknowledge that the term of support is extended to satisfy Husband's obligation to pay Wife some value for the business interests."* (Emphasis added). *Id.* at p. 6. The payments are taxable to wife, deductible to Husband, and are not affected by the cohabitation or remarriage of wife per Section 3.C. Thus, the total potential monthly support liability is $3.6 Million.

{¶ 40} Section 3.D. states that the "additional spousal support" payments begin on or before December 31, 2034. The payments are due quarterly and extend

for "six (6) years until Husband has paid a total of $450,000 to Wife." *Id.* The payments are not income to Wife or deductible by Husband. If the Wife dies prior to payment in full, the balance is to be paid to the children.

{¶ 41} Finally, Section 3.E. provides:

> All [of] the payments contained in this Section 3 shall be paid by Husband's estate in the event of his death. In addition, Husband shall secure his obligations in this section by naming Wife as a beneficiary on a term life insurance policy with a face value of no less than Three Million Dollars ($3,000,000.00). Husband shall provide proof of the existence of such policy and the designation of Wife as the beneficiary thereon prior to Wife's execution of this Agreement. Husband shall provide proof the continuation of the policy and designation of Wife as beneficiary on no less than an annual basis. Should Husband fail to provide such proof Wife shall have the right to obtain life insurance coverage on Husband's life and Husband shall be obligated to pay for any premiums required to obtain such coverage. Once Husband's financial obligations are reduced below Three Million Dollars, he can decrease the amount of coverage to correspond with his obligations herein but he shall secure the remaining stream of income and payments to Wife.

Separation agreement, p. 6 (Oct. 16, 2014).

{¶ 42} As is typical, the separation agreement allocates various obligations and payments by the parties to each other and for third-party obligations. Section 15 provides, "[e]xcept as otherwise expressly provided herein, this Agreement shall not be altered or modified, unless it be done in writing and signed by both parties." Section 17, entitled "performance of necessary acts," adds

> Each party shall execute any and all deeds, titles, bills of sale, support agreements, or other acts which may be required or necessary to carry out and effectuate, any and all of the purposes and provisions herein set forth within thirty (30) days of execution thereof.

*Id.* at p. 14-15.

{¶ 43} The pledge agreement and cognovit note were executed on January 22, 2015, within 30 days of the divorce decree in accord with Section 17. Cody adamantly maintains that the express lien created and perfected by the parties under those agreements are part of the same transaction and should be considered as part of the integrated agreement between the parties.

> "As a general rule of construction, a court may construe multiple documents together if they concern the same transaction." *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 314, 511 N.E.2d 106 (1987). "[A]ll writings that are a part of the same transaction should be interpreted together, and effect should be given to every provision of every writing." *Prudential Ins. Co. of Am. v. Corporate Circle*, 103 Ohio App.3d 93, 98, 658 N.E.2d 1066 (8th Dist.1995), citing *Abram & Tracy, Inc. v. Smith*, 88 Ohio App.3d 253, 623 N.E.2d 704 (10th Dist.1993). "[W]ritings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole." *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997).

*Seyfried v. O'Brien,* 2017-Ohio-286, 81 N.E.3d 961, ¶ 24 (8th Dist.). *See also Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 32 ("[a]s a general rule of construction, a court may construe multiple documents together if they concern the same transaction." *Ctr. Ridge Ganley, Inc. v. Stinn*, 31 Ohio St.3d 310, 314, 511 N.E.2d 106 (1987).

{¶ 44} The pledge agreement lists as consideration the promissory note executed concurrently and states that it is issued "pursuant to a Separation Agreement dated on or about the date hereof." The cognovit note is for the sum of $450,000 and provides that the holder may "declare the entire debt due after ten days continuous default in the payment of an installment of principal upon

demand."   The UCC-1 financing statement filed September 23, 2016, describes a secured interest in the RAM Sensors stock pursuant to the January 22, 2015 pledge agreement.

{¶ 45} "We seek primarily to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.,* 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.  We agree with the trial court's determination that the parties' intent as reflected by the plain language of the agreement was to secure the quarterly spousal support payments and the monthly spousal support payments.

{¶ 46} Our conclusion is bolstered by the provision in 2E that "Husband shall secure his obligations by assigning to Wife his interest in RAM Sensors, Inc. to secure the payments due to Wife.  Husband shall execute a Cognovit Note and stock pledge to secure the payments."   It is further supported by the statement in Section 3B setting forth the monthly payment provision:  "[t]he parties acknowledge that the term of support is extended to satisfy Husband's obligation to pay Wife some value for the business interests."

{¶ 47} The $450,000 RAM Sensors stock interest is a perfected lien against the quarterly spousal payments.  This court recognized that fact in *Miller I* where we stated that Karen's secured interest of $450,000 for the RAM Sensors stock is a perfected "lien that becomes due in the future; it is not a present interest in

ownership of the stock." *Miller*, 2019-Ohio-1886, 135 N.E.3d 1271, at ¶ 32 (8th Dist.).

{¶ 48} However, as the trial court declared, the "express intent of the parties was that David would execute a cognovit note and stock pledge to secure the 240 monthly support payments, as well as the later quarterly support payments." Journal entry No. 109812564, p. 6-7 (Aug. 5, 2019). The record does not support that a note and pledge were also executed to cover the monthly payments. "R.C. 3105.011[A] provides that the domestic relations court 'has full equitable powers' and equitable liens have been recognized in Ohio." *Millhon v. Millhon*, 10th Dist. Franklin No. 90AP-1111, 1991 Ohio App. LEXIS 1375, at *11 (Mar. 26, 1991).

{¶ 49} In fact, "[t]he doctrine of equitable liens has been liberally extended in order that the intention of the parties, to create specific charges, may be justly and effectually carried out." *Empire Affiliates Credit Union v. Osborne*, 5th Dist. Richland No. 99 CA 3, 1999 Ohio App. LEXIS 3897, at *9 (Aug. 23, 1999), citing 34 Ohio Jurisprudence 2d 428, Liens, Section 18. *Swartz v. Swartz*, 5th Dist. Fairfield No. 02 CA 31, 2003-Ohio-1755, ¶ 28.

{¶ 50} This court agrees that the parties intended to secure the spousal payments. As we previously held and the trial court elucidated in this case:

> Courts have defined "equitable lien" as '[an] express executory agreement in writing whereby a contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated which is enforceable against the property in the hands not

only of the original contractor, but of his purchasers or encumbrancers with notice. * * * The doctrine itself is clearly an application of the maxim 'equity regards as done that which ought to be done.'" The salient features of an equitable lien, therefore, require (1) a debt, duty or obligation; (2) an identifiable res; and (3) an express or implied intent for that the property serve as security for the payment of a debt or obligation. (Citations omitted.)

Journal entry No. 1099812564, p. 7 (Aug. 5, 2019), quoting *Landskroner v. Landskroner*, 154 Ohio App.3d 471, 2003-Ohio-5077, 797 N.E.2d 1002, ¶ 34 (8th Dist.).

{¶ 51} The trial court recognized, and we concur, that the equitable lien features are present in this case.

Here there is an obligation — the spousal support; an identifiable res — the RAM [Sensors] stock owned by David; and, an express agreement that the stock would serve as collateral on the spousal support obligation. The Court finds that Karen holds an equitable lien on the RAM [Sensors] stock as to the monthly spousal support payments.

An equitable lien, however, does not give the lienholder a possessory interest in the property. 51 American Jurisprudence 2d, Liens, Section 31, at 118 (2011). Consequently, Karen is not entitled to a declaration or order that Cody convey the RAM stock to her.

(Fn. omitted.) Journal entry No. 109812564, p. 7 (Aug. 5, 2019).

{¶ 52} We do not find that the trial court erred as a matter of law. The first, second, and third assigned errors are overruled. Our finding on these errors renders the fourth assignment of error, that an equitable lien could not be created where an express lien exists, moot. App.R. 12(A).

### B.    Equitable Lien as Life Insurance

{¶ 53} Cody's fifth and final assigned error posits that the equitable lien in this case against current support effectively constitutes life insurance that may not

serve as security unless the decree "specifically states that the spousal support continues after the death of the obligor." *Hoopes v. Hoopes*, 8th Dist. Cuyahoga No. 106855, 2018-Ohio-5232, ¶ 18, *Janosek v. Janosek*, 8th Dist. Cuyahoga Nos. 86771 and 86777, 2007-Ohio-68, ¶ 10, citing *Waller v. Waller*, 163 Ohio App.3d 303, 2005-Ohio-4891, 837 N.E.2d 843 (7th Dist.).

{¶ 54} Cody explains that an equitable lien may not be created to secure current support obligations and that those obligations terminate upon the death of David or Karen, as the divorce decree provides. Current spousal support is governed by R.C. 3105.18(B). The statute provides in part, "[a]ny award of spousal support made under this section shall terminate upon the death of either party, unless the order containing the award expressly provides otherwise."

{¶ 55} In contrast, Cody argues, a life insurance policy may serve as "security for the division of property settlement award (as finally determined) and attorney fees." *McCoy v. McCoy*, 91 Ohio App.3d 570, 582-583, 632 N.E.2d 1358 (8th Dist.1993), citing *Nori v. Nori*, 58 Ohio App.3d 69, 568 N.E.2d 730 (12th Dist.1989), and *Gore v. Gore*, 27 Ohio App.3d 141, 499 N.E.2d 1281 (9th Dist.1985). Thus, Cody offers that the rule of law applicable to life insurance in the cited instances applies in this case and that the trial court may not order a lien to attach to collateral to secure a spousal support obligation because it equates to requiring life insurance under R.C. 3105.18(B).

{¶ 56} Section 3B of the separation agreement provides that payments cease upon death "except as otherwise provided in Section 3." Section 3E provides that

Husband's estate is required to pay "all payments contained * * * in Section 3. The section also requires that the husband secure all Section 3 obligations with a term life insurance policy with a minimum face value of $3,000,000." Thus, the agreement specifically provides for life insurance to serve as security in addition to the secured and equitable security.

{¶ 57} Cody's argument here fails. The fifth assigned error is without merit.

**VII. Karen's Cross-Appeal**

{¶ 58} Karen adopts the statement of facts and definitions set forth in Cody's appellate brief and presents a single cross-assignment of error: The trial court improperly granted summary judgment in Cody's favor and determined he was not personally liable for the payment of David's 240 months of spousal support. As stated in the direct appeal opinion, our standard of review is de novo, using the same standard as the trial court. *Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

{¶ 59} Cody counters that this court is not required to address this single cross-assignment of error because the issue was not presented at the trial court. In the court below, Karen offered two grounds for Cody's personal liability for spousal support: "(1) that the transfer of David's shares in RAM Sensors, Inc., to Cody was a fraudulent conveyance; and, (2) that this Court's June 24, 2015 withholding or deduction notice to RAM Sensors, Inc., obligates the company, and Cody as present owner of the company, to Plaintiff."

{¶ 60} We first address whether plain error applies:

The Rules of Civil Procedure do not provide for plain-error review. Indeed, "'the idea that parties must bear the cost of their own mistakes at trial is a central presupposition of our adversarial system of justice.'" *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997), quoting *Montalvo v. Lapez*, 77 Haw. 282, 305, 884 P.2d 345 (1994), (Nakayama, J., concurring in part and dissenting in part). Thus, we have explained that in recognizing plain error in a civil case, a court must proceed with utmost caution, limiting use of the doctrine to "the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Id.* Nothing in the facts before us makes this one of those extremely rare cases in which civil plain-error review is appropriate. *Id.* Indeed, we find no error, plain or otherwise.

*Jones v. Cleveland Clinic Found.*, Slip Opinion No. 2020-Ohio-3780, ¶ 24.

{¶ 61} The trial court's September 25, 2019 judgment entry addressed the following issue: "whether Cody is personally liable" to Karen "for spousal support payments defendant David Miller is obligated to make" to Karen. Journal entry No. 110540153, p. 1 (Sept. 25, 2019). Karen presented two "theories" for Cody's personally liability for spousal support:

> (1) that the transfer of David's shares in RAM Sensors, Inc. to Cody was a fraudulent conveyance; and,

> (2) that this Court's June 24, 2015 withholding or deduction notice to RAM Sensors, Inc., obligates the company, and Cody as present owner of the company, to Plaintiff.

*Id.* Both theories were unsuccessful.

{¶ 62} The trial court first found that the transfer of the RAM Sensors stock in *Miller I* was not a fraudulent conveyance and that Karen's interest as a secured creditor was not impaired. The trial court next determined:

The only "authority" Plaintiff puts forward for the proposition that RAM Sensors, Inc. and Cody as owner of that company are personally liable to her for spousal support is her own testimony that "Mr. Miller paid his support from RAM Sensors," and this Court's withholding order to RAM Sensors, Inc., which was then Defendant's employer.

The applicable statutes require an employer to withhold support "from the obligor's income;" and require a financial institution to withhold support "from the obligor's account." *E.g.*, R.C. 3121.03((A)(1)(a) and (B)(1)(a). Nothing in the statute imposes any obligation on the employer or financial institution to pay support from its own funds.

Plaintiff's argument is untenable.

*Id.* at p. 2.

{¶ 63} Karen now argues on appeal that ownership of the stock became vested in Karen upon David's default and presents an underlying issue that "[w]hen a party takes an asset which secures the creditor's payments does the party taking the asset have any obligations to make the payments?" Accordingly, Karen now argues that the right to ownership vested in Karen when David defaulted.  It is unclear what event of default Karen complains of.  However, it is clear that "[a] party cannot raise new issues or arguments for the first time on appeal; failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes." *Scott Fetzer Co. v. Miley*, 8th Dist. Cuyahoga No. 108090, 2019-Ohio-4578, ¶ 41.

{¶ 64} Karen has waived the issue and this court is not required to address the merits.  The single cross-assignment of error is overruled.

## VIII. Conclusion

{¶ 65} The trial court's judgment is affirmed.

It is ordered that each party bear their own costs herein taxed.

The court finds there were reasonable grounds for these appeals.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN C. GALLAGHER, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

SEAN C. GALLAGHER, P.J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 66} I respectfully dissent from the majority's conclusion to affirm the imposition of an equitable lien upon Cody Miller's acquired interest in David Miller's 50 percent ownership of RAM Sensors, Inc., but concur with the majority's resolution of the remaining assigned errors. Based on the following, therefore, I concur in part and dissent in part.

{¶ 67} Although Ohio recognizes equitable liens, an equitable lien cannot arise from moral obligations alone; it must be found in established equitable principles. *Kryder v. Estate of Rogers*, 296 F.Supp.3d 892, 910 (M.D.Tenn.2017), quoting *Greer v. Am. Sec. Ins. Co.*, 223 Tenn. 390, 445 S.W.2d 904, 907 (Tenn.1969). In the plainest of terms, and under the most basic tenet of equity, equitable doctrines cannot be applied to override the plain terms of a contract. *US*

*Airways, Inc. v. McCutchen*, 569 U.S. 88, 106, 133 S.Ct. 1537, 185 L.Ed.2d 654 (2013) (Scalia, J., dissenting) (agreeing with the majority's conclusion that equitable liens arise from and serve to carry out a contract's provisions); *see also Kondaur Capital Corp. v. Smith*, 802 Fed.Appx. 938, 949 (6th Cir.2020), fn. 10, citing *Greer v. Am. Sec. Ins. Co.*, 223 Tenn. 390, 445 S.W.2d 904, 907 (Tenn. 1969), *Metro. Govt. of Nashville & Davidson Cty. v. Cigna Healthcare of Tennessee, Inc.*, 195 S.W.3d 28, 32 (Tenn.App. 2005), and *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 579 (Tenn.App. 2003). The primary inquiry in this case is whether Karen can assert a right to impose an equitable lien. I conclude that she cannot.

{¶ 68} An equitable lien arises in situations in which parties to an agreement intended a security interest to arise from the agreement, but steps necessary to effectuating the agreement were never implemented. In that case, the equitable lien arises to secure the parties' original intent. In this case, the equitable lien could have arisen from the separation agreement had the parties failed to execute documents securing Karen's interest in David's ownership of RAM Sensors. In that case, the court could have imposed an equitable lien to effectuate the parties' intent. That however, is not the situation presented in this case. In this case, the parties contemplated executing documents to effectuate Karen's interest in David's ownership of RAM Sensors to secure payment of monies owed under the separation agreement, but those documents limited the lien to $450,000. That cannot be ignored.

{¶ 69} The separation agreement clause at issue, Section 2.E., provides that

> Husband has an interest in Miller Wire & Cable Co. Inc. and RAM Sensors, Inc. In consideration of the terms of this Agreement and the specific terms set forth herein below, Wife relinquishes all right[,] title[,] and interest she may have to the assets and income of both entities except that Husband shall secure his obligations by assigning to Wife his interest in RAM Sensors, Inc. to secure the payments due to Wife. Husband shall execute a Cognovit Note and stock pledge to secure the payments and he shall not encumber, transfer, assign, pledge or otherwise or alienate his interest in RAM Sensors, Inc. without Wife's prior written authorization until he has satisfied his obligations herein.

Thus, under the plain and unambiguous terms of the parties' agreement, the lien meant to secure the payments due to Karen Miller under the separation agreement was expressly to be created by executing a cognovit note and stock pledge agreement. Under well-settled Ohio law, "all writings that are a part of the same transaction should be interpreted together, and effect should be given to every provision of every writing." *Prudential Ins. Co. of Am. v. Corporate Circle*, 103 Ohio App.3d 93, 98, 658 N.E.2d 1066 (8th Dist.1995), citing *Abram & Tracy, Inc. v. Smith*, 88 Ohio App.3d 253, 623 N.E.2d 704 (10th Dist.1993); *see also Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 159 Ohio St.3d 194, 2019-Ohio-4716, 150 N.E.3d 28, ¶ 32. We, therefore, cannot construe the intent of the parties from the terms of the separation agreement in isolation.

{¶ 70} In addition to those three documents being considered in their totality, Karen's subsequent conduct in filing a Uniform Commercial Code Financing Statement ("U.C.C. Statement") is dispositive. The purpose of a U.C.C. Statement is "'to give notice to other creditors or potential creditors that another may have a security interest in certain of the debtor's assets.'" *Abercrombie & Fitch*

*Stores Inc. v. Am. Commercial Constr.*, 499 Fed.Appx. 550, 557-558 (6th Cir.2012), quoting *Cassel v. Kolb*, 72 Cal.App.4th 568, 84 Cal.Rptr.2d 878, 882 (Cal.App. 1999). If Karen believed herself entitled to a $4 million lien against David's shares of RAM Sensors based on the terms of the separation agreement, the U.C.C. Statement would have been the mechanism to secure her rights, not the seeking of an equitable lien in excess of that which she claimed in the U.C.C. Statement. *See, e.g., McCoy's Waste Indus. & Mfg. v. Adams Natl. Bank (In re McCoy's Waste Industries & Mfg.),* Bankr.D.D.C. Case No. 94-00227 (Chapter 11), Adv. Proc. No. 94-0096, 1995 Bankr. LEXIS 2111, at 82 (Oct. 4, 1995) (allowing the use of an equitable lien would defeat the purpose behind filing a U.C.C. financing statement that assures the public of the extent of the creditor's lien).

{¶ 71} Further, the parol evidence rule has no impact here and does not preclude consideration of the subsequent documents or Karen's conduct. *Hills & Hollers, L.L.C. v. Ohio Gathering Co., L.L.C.*, 2018-Ohio-2814, 116 N.E.3d 801, ¶ 34 (7th Dist.), citing *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, 94 N.E.3d 73, ¶ 41 (7th Dist.) ("the parol evidence rule does not bar evidence of a subsequent agreement, modification of an agreement, or waiver of an agreement by language or conduct"). The parol evidence rule provides that "[w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise*, of antecedent understandings and negotiations* will not be admitted for the purpose of varying or contradicting the writing." (Emphasis added.) *Ed

*Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 440, 1996-Ohio-194, 662 N.E.2d 1074, quoting 3 Corbin, *Corbin on Contracts*, Section 573 at 357 (1960). Thus, evidence of any prior understanding of the contract is inadmissible to demonstrate the parties' interpretation of a later-executed document. Evidence of documents executed subsequent to and as contemplated in the original contract and evidence of the subsequent acts of the parties are not precluded under the parol evidence rule.

{¶ 72} It is undisputed that the cognovit note and stock pledge unambiguously create a lien against David Miller's ownership of RAM Sensors stock, securing payments under the separation agreement expressly totaling $450,000. Karen makes no attempt to argue otherwise. In securing the lien created by the separation agreement, cognovit note, and stock pledge documents, Karen filed a U.C.C. Statement unequivocally setting forth that "pursuant to the terms of certain agreements between the Debtor [David] and Secured Party [Karen] entitled 'Pledge Agreement,'" the security interest created by the stock pledge agreement is the first position lien on all David's interest in RAM Sensors. Through that U.C.C. Statement, Karen put the world on notice that the lien created by the separation agreement extended only to the extent set forth in the stock pledge agreement, limiting the lien to encumbering $450,000 of the total value of David's stock. Because any equitable lien can arise only in the absence of an express contract, Karen's acceptance of the cognovit note and ratification of the stock pledge agreement through her U.C.C. Statement precludes her from now asserting an equitable lien on the full value of all

payments obligated under the terms of the separation agreement instead of the $450,000 she claimed through the U.C.C. statement.

{¶ 73} Based on the foregoing, I would reverse the imposition of an equitable lien established against the shares of RAM Sensors that Cody acquired from David and enter judgment as a matter of law in favor of Cody, to the extent that such a judgment has no impact on Cody's acknowledgment of the lien established by the U.C.C. statement. I fully concur with the majority's resolution of Karen's assigned errors. As a result, I respectfully concur in part and dissent in part.