[Cite as *Michael v. Miller*, 2025-Ohio-271.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

KAREN MICHAEL,                                   :

    Plaintiff-Appellant,              :

                               No. 113706

    v.                                       :

CODY MILLER, ET AL.,                             :

    Defendants-Appellees.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 30, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-894849

---

### *Appearances:*

Zagrans Law Firm LLC and Eric H. Zagrans, *for appellant*.

Dooley, Gembala, McLaughlin & Pecora Co., LPA, and Scott J. Orille, *for appellees* Cody Miller and Ram Sensors, Inc.

Seeley, Savidge, Ebert & Gourash, Co., LPA, and Robert D. Anderle, *for appellees* Ronald and Joann Miller.

WILLIAM A. KLATT, J.:

{¶ 1} Plaintiff-appellant, Karen Michael ("Karen"), appeals from the trial court's February 6, 2024 judgment granting defendants-appellees, Cody Miller ("Cody") and Ram Sensors, Inc.'s ("Ram") motion for summary judgment. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This case stems from a civil dispute following a divorce decree between Karen and her ex-husband, David Miller ("David"). Karen and David were married in 1993 and were divorced pursuant to a divorce decree entered by the Cuyahoga County Court of Common Pleas, Domestic Relations Division, on January 12, 2015, in Cuyahoga D.R. No. DR-13-349594 ("the divorce proceedings"). Cody is Karen and David's adult son, and Ronald and Joann Miller ("Ronald" and "Joann," respectively) are David's parents and Cody's paternal grandparents. Ram is an Ohio corporation. In 2009, Ronald gifted David and then fifteen-year-old Cody each 50 percent of the shares of Ram stock. Ronald also gifted Cody funds in a Vanguard brokerage account. David subsequently became president of Ram.

{¶ 3} While the procedural history of the instant action is relatively straightforward, one of the central issues in this appeal has been addressed twice by this court and once by the Ohio Supreme Court. As such, our summary of the case history requires a discussion of several separate but related actions.

**Karen and David's Separation Agreement**

{¶ 4} The January 2015 divorce decree incorporated a separation agreement, pursuant to which David was obligated to pay Karen spousal support in the amount of $15,000 per month for 20 years, terminating in December 2034 ("the current spousal support obligation"). The separation agreement also provided that upon completion of the monthly support payments, David would pay Karen additional spousal support in 24 quarterly payments of $18,750 for six years ("the future spousal support obligation"). The agreement also stated that David would repay to Cody funds that David had withdrawn from Cody's Vanguard accounts and from Ram distributions to which Cody was entitled for the years 2011 through 2014.

{¶ 5} Pursuant to the separation agreement, Karen agreed to relinquish all rights and interest that she may have had in Ram and David agreed to secure his spousal-support obligations by executing a cognovit note and stock-pledge agreement. David further agreed that he would not "encumber, transfer, assign, pledge or otherwise alienate his interest" in Ram without Karen's prior written consent. After the divorce decree was finalized, David executed a cognovit note in the amount of $450,000 to be paid to Karen. David and Karen also entered into a stock-pledge agreement in which David pledged all of his Ram stock to Karen in consideration of and as security for the cognovit note.

**Cody's Lawsuit Against David and Ram**

{¶ 6} In November 2015, Cody and Ram filed a lawsuit against David in the Cuyahoga County Court of Common Pleas in Cuyahoga C.P. No. CV-15-854301 "to

both recover the funds stolen from [Cody] and to protect Ram Sensors" ("the 2015 civil action"). Cody alleged that David had breached his fiduciary duties and had misappropriated funds belonging to Cody and Ram. Cody also sought a temporary restraining order and preliminary injunction to remove David Miller from his position as president of RAM. The trial court granted the temporary restraining order.

{¶ 7} In September 2016, Karen recorded a Uniform Commercial Code ("UCC") financing statement with the Ohio secretary of state. The UCC financing statement describes the security interest as follows:

> Pursuant to the terms of a certain agreement between [David] and [Karen] entitled "Pledge Agreement," dated January 22, 2015, the security interest described herein is a first position lien on all of [David's] right, title and interest in and to [David's] equity interest in Ram Sensors Inc., an Ohio Subchapter S corporation, including all classes of stock whether certificated or uncertificated.

{¶ 8} Cody and David subsequently entered into a settlement agreement in the 2015 civil action, which the trial court approved, entering an agreed order in April 2017 against David for $2,874,437.56 with interest. According to the agreed order, David was required to transfer all his stock in Ram to Cody except as noted in the settlement agreement:

> David Miller is the true and lawful owner of the David Miller Stock [defined in the settlement agreement as David's 50% of Ram stock], he has not sold, transferred, assigned, conveyed, mortgaged, pledged or otherwise hypothecated or encumbered the David Miller Stock except pursuant to the certain stock pledge agreement in favor of Ms. Karen Michael as evidenced in Disclosure Schedule 3.1 hereto.

The Disclosure Schedule attached to the settlement agreement was the $450,000 cognovit note and the stock-pledge agreement securing the cognovit note.

**Karen's Attempts to Secure Her Interest in Ram Stock**

{¶ 9} Three weeks after the conclusion of the 2015 civil action, Karen filed a post-decree pleading in her divorce case with David; specifically, Karen filed a motion seeking transfer to Karen of David's 50% share of Ram stock pledged to her in the divorce and a request for a judgment declaring that David had assigned his rights to the stock to Karen and that David's transfer of the stock to Cody was "an illegal transfer." Nine months later, after requesting three continuances in the matter, Karen withdrew this post-decree pleading.

{¶ 10} Shortly after withdrawing her post-decree pleading in the divorce proceedings and nearly one year after the settlement of the 2015 civil action, Karen attempted to intervene in the civil action and filed a motion requesting that the court vacate the agreed judgment entry between Cody and David. The trial court denied Karen's motions, and Karen appealed to this court. *Miller v. Miller*, 2019-Ohio-1886 (8th Dist.).

{¶ 11} In *Miller v. Miller*, Karen argued that her intervention in the 2015 civil action was necessary "to protect her interest" in David's 50 percent Ram stock because "David's share of the stock [was] security for David's spousal support obligations — both current and future — and the conveyance of David's interest in the stock as partial satisfaction of the judgment was illegal." *Id.* at ¶ 31. This court rejected Karen's arguments, explaining:

Karen's interest in David's share of the RAM Sensors stock . . . is a lien that becomes due in the future; it is not a present interest in ownership of the stock. As part of the divorce settlement, David agreed to pay Karen $450,000 in additional support beginning December 2034. He then executed a cognovit note in the amount of $450,000 and secured it with a lien on his share of RAM Sensors stock, which was perfected by a stock pledge agreement and recorded with the Ohio Secretary of State. And the record shows that the transfer of David's 50 percent share to Cody was made subject to Karen's interest. Karen's interest in the stock, as a secured creditor, is therefore preserved. The evidence does not support Karen's argument that documents were executed entitling her to immediate transfer of David's stock for satisfaction of David's current support indebtedness, i.e., a new stock agreement, cognovit note, or UCC statement.

*Id*. at ¶ 32. This court further stated:

Karen's purported interest in the action is that of a lienholder — she has a lien on David's share of RAM Sensors stock that was transferred to Cody in partial satisfaction of the money judgment. Karen's interest in the stock becomes due in 2034, and the record establishes, through the settlement agreement and Cody's affidavit, that Cody takes David's stock subject to the lien created by the stock pledge agreement between Karen and David. The underlying action did not seek to foreclose or extinguish Karen's lien. And Karen fails to demonstrate how the disposition of the underlying action [the 2015 civil action] in her absence may impair or impede her ability to protect this interest.

*Id*. at ¶ 36. This court ultimately affirmed the trial court's denial of Karen's motions to intervene and to vacate the agreed judgment entry. *Id*. at ¶ 44-46.

{¶ 12} On March 20, 2018, while the appeal in *Miller v. Miller* was pending, Karen initiated the instant case by filing a civil complaint against Cody, Ram, David, Joann, and Ronald. Ronald and Joann were named both individually and in their capacities as trustees of the Miller Family Trust. Karen's complaint alleged that David was in default of the payments he owed her pursuant to their divorce decree. Specifically, Karen alleged that David was obligated to pay her spousal support for

20 years and, to secure his spousal support obligations, he was ordered to pledge his entire 50% interest in Ram's stock to Karen. She further alleged that the trial court's agreed judgment entry in the 2015 civil action violated the separation agreement.

{¶ 13} Karen's complaint alleged multiple causes of action. First, Karen sought a declaration that she had the superior right to David's 50% ownership in Ram that took precedence over Cody's claim. She also brought claims of wrongful conversion, tortious interference, fraudulent conveyance against Cody and Ram; claims of collusion and conspiracy against all defendants; and breach-of-fiduciary-duty claims against Cody, David, and Ronald as officers, directors, and shareholders of Ram.

{¶ 14} On April 27, 2018, Karen filed an amended complaint. On May 8, 2018, Karen filed a motion to disqualify Scott Orille as counsel for Cody and Ram. On May 18, 2018, Cody and Ram filed a motion to strike Karen's motion to disqualify. On May 25, 2018, Cody and Ram filed a motion to dismiss. On May 30, 2018, the trial court granted the motion to strike and Karen's motion to disqualify was stricken. On June 8, 2018, Ronald and Joann filed a motion to dismiss. On July 24, 2018, the trial court denied the defendants' motions to dismiss.

{¶ 15} On August 17, 2018, Ronald and Joann filed a joint answer and Cody and Ram filed a joint answer. In a telephone pretrial hearing on October 10, 2018, David appeared pro se and requested leave to plead. The trial court granted David leave to respond to Karen's complaint on or before November 15, 2018. On November 16, 2018, David filed a pro se answer.

{¶ 16} A pretrial hearing was held on December 17, 2018, and a journal entry the following day stated:

A pretrial was held on December 17, 2018. Counsel participated, but the case did not resolve. The parties entered into written stipulations to stay this case. The parties stipulate that "[t]he matter is hereby stayed effective immediately pending rulings by [the domestic relations division trial court] as to the extent of the financial obligations secured by 50% of the stock of Ram Sensors, Inc." The parties further stipulate, "a ruling will be sought from [the domestic relations division trial court] as to pending issues." Upon review of the complaint, count one seeks, in part, a judicial declaration of the rights of plaintiff Karen Miller, defendant David Miller, and defendant Cody Miller regarding the extent of their ownership and/or security interests in Ram Sensors, Inc. Consequently, count one may depend on the interpretation of agreements and/or orders entered into in Cuyahoga County Court of Common Pleas, General Division, Case No. CV-15-854301, before [the general division trial court] and pending on appeal, and in Cuyahoga County Court of Common Pleas, Domestic Relations Division, Case No. DR-13-349594, before [the domestic relations division trial court.] The subject agreements were first entered into as part of divorce proceedings between Karen Miller and David Miller in Case No. DR-13-349594. On December 17, 2018, Cody Miller was joined as a party defendant in those proceedings. Therefore, the court finds [the domestic relations division trial court] should have the first opportunity to interpret the agreements. The parties' request is granted and the case is stayed pursuant to the parameters of their stipulation. The court will lift the stay and return the case to its active docket upon a party's motion and for good cause shown. Notice issued.

{¶ 17} In January 2019, while the underlying action was stayed and before this court released its decision in *Miller v. Miller*, Karen filed another post-decree pleading in the divorce proceedings: a complaint for declaratory judgment and other equitable relief. In this complaint, Karen named David and Cody as defendants and once again sought a declaration that David's ownership of Ram stock "secure[d] all [his] obligations" under the parties' divorce decree, including his

monthly spousal-support payments.  She further requested that the court order Cody to transfer and convey David's stock to her and order Cody to pay her "maintenance and support payments" because Cody had subjected himself to liability to Karen "by taking subject to her lien, her security for the payments."  Cody filed an answer and counterclaim, and Karen and Cody subsequently filed competing motions for summary judgment.

{¶ 18} The domestic relations court found that "the express intent of the parties was that David would execute a cognovit note and stock pledge to secure the 240 monthly support payments, as well as the later quarterly support payments."  The court granted Karen's motion in part, concluding that she held a perfected lien on the Ram stock securing the quarterly payments totaling $450,000 beginning in 2034 and an equitable lien on the stock securing the monthly spousal-support payments from 2014 until 2034.

{¶ 19} Cody appealed to this court, and this court affirmed the trial court's decision and agreed with the trial court's finding that Karen and David intended to secure both the current monthly and the future quarterly spousal-support payments with the cognovit note and stock pledge.  *Michael v. Miller*, 2021-Ohio-307, ¶ 50-51.[1]  Cody again appealed, and the Ohio Supreme Court accepted the appeal on two propositions of law:

> Proposition of Law No. 1: Ohio Court[s] must strictly adhere to policies supporting the princip[les] of the UCC and should limit application of

---

[1] Karen first filed a motion to lift the stay in the underlying action on March 20, 2020. Defendants opposed this motion because of the pending appeal in *Michael v. Miller*.  On September 1, 2020, the trial court denied Karen's motion to lift the stay as unripe.

equitable remedies, including the imposition of equitable liens, which impair or undermine the purpose of the UCC.

Proposition of Law No. 2: An equitable lien should not be liberally extended to the prejudice of third-party creditors and the general public. Rather, an equitable lien should be established only after balancing the competing interests of the purported creditor, debtor, third-party creditors, and the public interest.

{¶ 20} On December 19, 2022, the Ohio Supreme Court reversed this court's decision in *Michael v. Miller*, concluding that this court misconstrued the separation agreement and erred when it failed to consider the cognovit note, stock-pledge agreement, and UCC financial statement as evidence of the parties' intent to secure the future obligation. *Michael v. Miller*, 2022-Ohio-4543, ¶ 29. Specifically, the Ohio Supreme Court held:

> The separation agreement expressly states that Cody had an interest in Ram Sensors and that Karen had relinquished her interest in the business "except that [David] shall secure his obligations by assigning to [Karen] his interest in Ram Sensors, Inc. to secure the payments due to [Karen]. [David] shall execute a Cognovit Note and stock pledge to secure the payments. . . ." Approximately ten days after the domestic-relations court entered final judgment in the divorce, David executed the cognovit note for $450,000 — the exact amount that David owed Karen for *additional* support beginning in 2034 — and Karen and David executed the stock-pledge agreement to secure the note on the same day that David executed the note. . . .
>
> . . .
>
> Moreover, approximately 20 months later — when David and Cody's case had been pending in the general division of the common pleas court for nearly 10 months — Karen filed the UCC financing statement. . . .
> . . .
>
> . . .Further, if Karen believed that the Ram Sensors stock secured both of David's support obligations, she could have filed a contempt motion

in her and David's divorce case in the domestic-relations court immediately following David's execution of the cognovit note, which occurred approximately ten days after the final divorce decree was entered. Significantly, David promised in the cognovit note to pay Karen $450,000 — *considerably less than $4.05 million*. Cody, well aware of his parents' divorce and settlement agreement, accepted his father's stock shares *subject to his mother's perfected lien* — a lien that she notified third-party creditors existed through the UCC financing statement.

*Id.* at ¶ 29-31.

{¶ 21} On September 19, 2023, Karen again filed a motion to lift the stay in the underlying action. On October 10, 2023, the trial court granted Karen's unopposed motion and reinstated the case to the active docket.

{¶ 22} On December 11, 2023, Cody and Ram filed a motion for judgment on the pleadings, or, in the alternative, a motion for summary judgment. On December 28, 2023, the trial court issued a journal entry stating that defendants' motion would be construed as a motion for summary judgment. On January 8, 2024, Karen filed a brief in opposition. On January 16, 2024, defendants filed a reply brief in support of their motion for summary judgment.

{¶ 23} On February 6, 2024, the trial court granted the defendants' motion for summary judgment, stating:

Defendants Cody Miller and Ram Sensors, Inc.'s motion for summary judgment filed 12/11/23 is granted. The court, having considered all the evidence and having construed the evidence most strongly in favor of the non-moving party, determines that reasonable minds can come to but one conclusion, that there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law. All of plaintiff's claims in this case have been fully and finally litigated and determined in cases before the Cuyahoga County Court of Common Pleas General Division (CV-15-854301), Domestic Relations Division

(DR-13-349594), the Eighth Appellate District Court of Ohio (CA-18-107319), and the Supreme Court of Ohio (*Michael v. Miller*, 171 Ohio St.3d 733 (2022)). Plaintiff's claims in this case are no longer viable. Summary judgment is therefore entered in favor of defendants and against plaintiff. Case dismissed with prejudice. Costs to plaintiff. Final. Court cost assessed to the plaintiff(s). Pursuant to Civ.R. 58(B), the clerk of courts is directed to serve this judgment in a manner prescribed by Civ.R. 5(B). The clerk must indicate on the docket the names and addresses of all parties, the method of service, and the costs associated with this service. Notice issued.

**{¶ 24}** On March 6, 2024, Karen filed a timely notice of appeal.[2] She raises three assignments of error for our review:

> I. The trial court erred by granting summary judgment against the plaintiff and dismissing the case, on the purported basis that all of the plaintiff's claims had been previously adjudicated and determined in other related cases, when the claims and allegations in her Third, Fifth, and Seventh Causes of Action had not been actually litigated and determined against these defendants in any other case.
>
> II. The trial court erred by granting summary judgment in essence in favor of parties that had not moved for summary judgment or joined in the summary judgment motion of co-defendants.

---

[2] On July 25, 2024, counsel for Ronald and Joann filed a notice of suggestion of death of Ronald, stating that Ronald had passed away on June 22, 2024. App.R. 29(A) governs substitution of parties and provides, in relevant part:

> If a party dies after a notice of appeal is filed or while a proceeding is otherwise pending in the court of appeals, the personal representative of the deceased party may be substituted as a party on motion filed by the representative, or by any party, with the clerk of the court of appeals. The motion of a party shall be served upon the representative in accordance with the provisions of Rule 13. If the deceased party has no representative, any party may suggest the death on the record and proceedings shall then be had as the court of appeals may direct.

No party has filed a motion to substitute. The claims against Ronald that are the subject of this appeal are the same as the remaining defendants; therefore, we will address the merits of the assignments of error as they relate to each defendant.

III. The trial court abused its discretion by failing to disqualify legal counsel for parties to this action, pursuant to Prof. Cond. Rule 3.7, when the attorney is a necessary witness with admissible, relevant and non-privileged testimony that is likely to be unobtainable from any other witness or source.

## Law and Analysis

### I. Summary Judgment

{¶ 25} In Karen's first assignment of error, she argues that the trial court erred by granting summary judgment against her and dismissing the case on the basis that all of her claims were adjudicated in other cases. Karen does not dispute that summary judgment was appropriate for the majority of her claims. However, Karen asserts in this appeal that her third, fifth, and seventh causes of action had not been litigated. Karen's third cause of action was her claim for tortious interference against Cody, Ram, and David. Karen's fifth cause of action was her claims for fraud, collusion, and civil conspiracy against Cody, Ram, David, Ronald, and Joann for what Karen refers to as "their intentional actions and schemes to violate her rights" under the divorce decree. Karen's seventh cause of action is that Cody, David, and Ronald breached their fiduciary duties as officers, directors, and shareholders of Ram and her claim for punitive damages.

{¶ 26} While Karen's argument on appeal includes her seventh cause of action, we note that in her brief in opposition to defendants' motion for summary judgment, Karen conceded her seventh cause of action "appear[ed] to have been precluded by the decisions of the Eighth District Court of Appeals in *Miller v. Miller*, 8th Dist. Cuyahoga No. 107319, 2019-Ohio-1886, and *Michael v. Miller*, 8th Dist.

Cuyahoga No. 109121, 2021-Ohio-307, and by the opinion of the Ohio Supreme Court in *Michael v. Miller*, 171 Ohio St.3d 733, 2022-Ohio-4543." It is well-settled that a party cannot raise new arguments and legal issues for the first time on appeal, and that the failure to raise an issue before the trial court waives that issue for appellate purposes. *Wells Fargo Bank, N.A. v. Lundeen*, 2020-Ohio-28, ¶ 14 (8th Dist.), citing *Miller v. Cardinal Care Mgmt.*, 2019-Ohio-2826, ¶ 23, citing *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017-Ohio-384 (8th Dist.). Because Karen conceded that her seventh cause of action before the trial court was precluded, she cannot now argue that summary judgment on that cause of action was improper. Therefore, our analysis of Karen's argument will be limited to her third and fifth causes of action; she has waived any argument relating to her seventh cause of action.

{¶ 27} We review an appeal from summary judgment under a de novo standard. *Cleveland Elec. Illum. Co. v. Cleveland*, 2020-Ohio-4469, ¶ 13-15 (8th Dist.), citing *Baiko v. Mays*, 140 Ohio App.3d 1, 10 (8th Dist. 2000). As such, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate. *Id.*, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 192 (8th Dist. 1997). Civ.R. 56(C) provides that before summary judgment may be granted, a court must determine:

> (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one

conclusion and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party.

{¶ 28} Summary judgment consists of a burden-shifting framework. The movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *N. Chem. Blending Corp. v. Strib Industries*, 2018-Ohio-3364, ¶ 40 (8th Dist.), citing *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Once the moving party satisfies its burden, the nonmoving party "'may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Id.*, quoting *Dresher* at 292-293; *Mootispaw v. Eckstein*, 1996-Ohio-389, 385; Civ.R. 56(E).

{¶ 29} As an initial matter, we note that while Karen disagrees with the defendants and the trial court that her claims have been fully litigated in other proceedings, she begins her statement of the case by describing the case below as her effort to remedy defendants' attempts "to deprive Karen of her ability to reach David's ownership of half of the Ram stock as collateral for his support obligations to her." While Karen has styled her causes of action in various ways, this is her ultimate goal.

{¶ 30} Further, in support of her first assignment of error, Karen points to the claims and issues resolved in the other litigation in an attempt to show that her

third and fifth causes of action have not been litigated. In doing so, she neglects to include any discussion of the elements of these causes of action or a discussion of whether there are genuine issues of material fact related to any of those elements.

**A. Tortious Interference**

{¶ 31} Karen first asserts that her tortious-interference claim against defendants has not been litigated. The elements of a tortious interference with a contract claim include "'(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.'" *N. Chem. Blending Corp.*, 2018-Ohio-3364, at ¶ 55, quoting *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171 (1999), paragraph one of the syllabus.

{¶ 32} The relevant contracts are the separation agreement and the stock purchase agreement. As determined by this court in *Miller v. Miller*, 2019-Ohio-1886 (8th Dist.), and the Ohio Supreme Court in *Michael v. Miller*, 2022-Ohio-4543:

> The separation agreement expressly states that Cody had an interest in Ram Sensors and that Karen had relinquished her interest in the business "except that [David] shall secure his obligations by assigning to [Karen] his interest in RAM Sensors, Inc. to secure the payments due to [Karen]. [David] shall execute a Cognovit Note and stock pledge to secure the payments. . . ."

{¶ 33} There is no question that the first two elements — the existence of a contract and the wrongdoer's knowledge of the contract — are met here.

{¶ 34} Our analysis now turns to the third element: the wrongdoer's intentional procurement of the contract's breach. To succeed on a tortious interference claim, Karen must establish that Cody's actions constituted an intentional procurement of the contract's breach. Karen has asserted that the settlement agreement in the 2015 civil action, memorialized in the April 2017 agreed judgment, constitutes a breach of the separation agreement. Karen bases this assertion on the idea that her "interest" in Ram stock was wrongfully converted. This assertion is unfounded and undermined by the procedural history of this case and other relevant case law. Specifically, this court held that Karen's "interest" in David's share of Ram stock "is a lien that becomes due in the future; it is not a present interest in ownership of the stock." *Miller v. Miller* at ¶ 32. The Ohio Supreme Court reiterated this holding when it found that Karen did not have an equitable lien securing David's current support obligation. *Michael v. Miller* at ¶ 33. Ohio courts have found that where a defendant is "merely trying to enforce its perceived legal rights" this does not "in and of itself, equate to an intention to procure the breach of any contract." *Columbia Dev. Corp. v. Krohn*, 2014-Ohio-5607, ¶ 22 (1st Dist.). Karen asserted in her complaint that David was in default of his current spousal support obligations. The fact that, while attempting to enforce his own legal rights related to Ram and its stock, Cody took David's Ram stock — subject to Karen's lien — does not amount to Cody's intentional procurement of a breach of contract between Karen and David.

{¶ 35} Our analysis now turns to the question of whether Cody and Ram had a lack of justification for what Karen considers interference with a contract. The lack of justification element "requires proof that the defendant's interference with another's contract was improper." *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 172 (1998), citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415 (1995). Moreover, Ohio law places the burden of proving a lack of privilege or justification upon the plaintiff. *Krohn* at ¶ 25. Generally, one is privileged or justified in this context "by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction." *Id.* at ¶ 26, citing the Restatement of the Law 2d, Torts, § 773 (1979).

{¶ 36} As described at length above, the actions Karen portrays as tortious interference with a contract were Cody's successful attempts to remedy David's misappropriation of Ram funds and mismanagement of Ram. Ohio courts "have approved 'the well-recognized privilege of officers, directors, and creditors to interfere with contracts in furtherance of their legitimate business interests.'" *Daup v. Tower Cellular, Inc.*, 136 Ohio App.3d 555, 568 (10th Dist. 2000), citing *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.*, 862 F.2d 597, 601 (6th Cir. 2000). Cody was a 50% shareholder in Ram and the president of the company when he executed on David's stock shares. Given this context, Karen is unable to establish the lack of justification necessary to succeed on a tortious-interference claim. Because there are no genuine issues of material fact and Cody and Ram were entitled

to judgment as a matter of law on Karen's claim for tortious interference with a contract, summary judgment on this claim was proper.

## B. Fraud, Collusion, and Civil Conspiracy

{¶ 37} Karen likewise asserts that her fifth cause of action — her claims for fraud, collusion, and civil conspiracy — were not fully litigated and therefore the trial court erred in granting the defendants summary judgment on this cause of action. Karen's fifth cause of action specifically asserted that the 2015 civil action and the final judgment therein were obtained with the fraudulent purpose of depriving Karen of her interest under the separation agreement. However, as previously noted, this court determined in paragraph 32 of *Miller v. Miller* that the final judgment in the 2015 civil action preserved Karen's rights under the separation agreement.

{¶ 38} In her brief in opposition to the defendants' motion for summary judgment, Karen described her fifth cause of action as relating to the defendants' "intentional actions and schemes to violate her rights under the January 2015 and January 2017 Judgment Entries." While Karen asserted that no prior decision of any court has addressed these claims, she did not identify any genuine issues of material fact that remained with respect to fraud, collusion, or civil conspiracy. In her appellate brief, Karen refers to defendants' attempts "to divert and hide David's assets and property in the attempt to frustrate and defeat Karen's ability to . . . collect the funds due" to her in her divorce. But, she does not identify any specific action that defendants allegedly took (beyond those they took to pursue their own

legitimate rights) to inhibit her ability to collect the funds due her in her divorce. Beyond repeatedly emphasizing that various aspects of this case's procedural history, including the 2015 civil action, were "fraudulent," Karen offers no further basis for her argument that summary judgment on her fifth cause of action was improper. She has failed to meet her reciprocal burden under Civ.R. 56 to demonstrate there is a genuine issue for trial on these claims. Because there is no genuine issue of material fact, and the defendants are entitled to judgment as a matter of law, summary judgment in favor of the defendants on Karen's fifth cause of action was proper.

{¶ 39} For these reasons, Karen's first assignment of error is overruled.

## II. Summary Judgment Against Ronald and Joann

{¶ 40} In Karen's second assignment of error, she argues that the trial court erred by granting summary judgment in essence in favor of parties that had not moved for summary judgment or joined in the summary judgment motion of codefendants.

{¶ 41} The Ohio Supreme Court has held

> "[w]hile Civ.R. 56 does not ordinarily authorize courts to enter summary judgment in favor of a non-moving party," summary judgment in favor of the nonmovant may be proper, and does not prejudice due-process rights, when "all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law."

*Ohio State Bar Assn. v. Watkins Global Network, L.L.C.*, 2020-Ohio-169, ¶ 23, quoting *State ex rel. Cuyahoga Cty. Hosp. v. Ohio Bur. of Workers' Comp.*, 27 Ohio

St.3d 25 (1986). The Ohio Supreme Court has stated that "the reason for this exception is that the parties have had an opportunity to submit all evidence to the court, and the parties have notice that the court is considering summary judgment." *Todd Dev. Co. v. Morgan*, 2008-Ohio-87, ¶ 17. In this circumstance, summary judgment entered in favor of a party who has not moved for summary judgment does not infringe any party's due process rights.

{¶ 42} Entering summary judgment in favor of Ronald and Joann was warranted under the specific facts of this case. The only claim against Ronald and Joann was Karen's fifth cause of action for fraud, collusion, and civil conspiracy. As discussed in our analysis of Karen's first assignment of error, summary judgment was proper on these claims because there exist no genuine issues of material fact, and the defendants were entitled to judgment as a matter of law. Further, Karen was on notice from the trial court that it was considering summary judgment and had ample opportunity to respond. For these reasons, it was not error for the trial court to enter summary judgment in favor of all defendants. Karen's second assignment of error is overruled.

### III. Motion to Disqualify

{¶ 43} In Karen's third assignment of error, she argues that the trial court abused its discretion by failing to disqualify legal counsel for parties to this action, pursuant to Prof.Cond.R. 3.7, when the attorney is a necessary witness with admissible, relevant, and nonprivileged testimony that is likely to be unobtainable from another witness or source. Karen asserts that the trial court's decision to strike

Karen's motion to disqualify attorney Scott Orille constituted an abuse of discretion. We disagree.

{¶ 44} As an initial matter, we note that in reviewing an appellant's claims of error, an appellate court is limited to the facts and evidence set forth in the record of appeal and cannot consider facts outside that record. *Nunn v. Mitchell*, 2024-Ohio-4586, ¶ 15 (8th Dist.), citing *In re Q.S.*, 2023-Ohio-712, ¶ 105 (8th Dist.), citing App.R. 9; App.R. 12(A)(1)(b); *In re K.K.*, 2021-Ohio-3338, ¶ 16, fn. 3 (4th Dist.). Therefore, to the extent that Karen's arguments in support of her third assignment of error are based upon the motion to disqualify Scott Orille that was stricken from the record by the trial court, we are unable to consider them. Instead, our analysis is concerned solely with the trial court's decision to strike the motion to disqualify.

{¶ 45} The determination of a motion to strike is within the court's broad discretion, and a court's ruling on a motion to strike will not be reversed on appeal absent an abuse of discretion. *Nunn v. Mitchell*, 2024-Ohio-4586, ¶ 16 (8th Dist.), citing *State ex rel. Ebbing v. Ricketts*, 2012-Ohio-4699, ¶ 13. An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 46} Karen has not pointed to anything in the record or relevant case law that would support a conclusion that the trial court somehow exercised its judgment

in an unwarranted way when it struck her motion to disqualify from the record. Further, our independent review of the record does not reveal any indication that the trial court's decision to strike the motion was in any way unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion in striking Karen's motion to disqualify from the record. Karen's third assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

WILLIAM A. KLATT, JUDGE*

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR

(*Sitting by assignment:  William A. Klatt, J., retired, of the Tenth District Court of Appeals.)