[Cite as *Whiteford, Taylor & Preston, L.L.P. v. Middleman*, 2026-Ohio-654.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WHITEFORD, TAYLOR &
PRESTON, L.L.P.,

      Plaintiff-Appellee,

      v.

AMY B. MIDDLEMAN,

      Defendant-Appellant.

:
:
:      No. 115121
:
:
:
:

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 26, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-101942

### *Appearances:*

Bernstein-Burkley, PC, and Gus Kallergis; Whiteford,
Taylor & Preston, L.L.P., and C. Andrew Barnes, *for
appellee.*

Eckert Seamans Cherin & Mellott, LLC, Amy J. Roy, and
Shane D. Valenzi, *for appellant.*

SEAN C. GALLAGHER, J.:

{¶ 1} Defendant-appellant Amy B. Middleman ("Middleman") appeals the trial court's decision granting the motion for summary judgment of plaintiff-appellee Whiteford, Taylor & Preston, L.L.P. ("WTP" or "Whiteford"). Upon

review, we reverse the judgment of the trial court and remand the case with instructions for the trial court to vacate the award of $40,117.16 and to proceed to trial in the matter.

{¶ 2} The record reflects that in early 2023, Middleman was sued by a former employer in an Oklahoma case. At that time, Middleman's brother, attorney Ray Middleman ("Ray Middleman"), was an equity partner at WTP. Middleman contacted Ray Middleman for help with the matter. In an email exchange on January 27, 2023, Ray Middleman sent Middleman an engagement letter and WTP's standard terms of engagement and asked her to "review and let me know if you have any questions." In response, Middleman asked Ray Middleman to give her "an idea of how much this will end up costing," and he indicated the following:

> [It's] not going to cost you more than the FedEx charges at this point and you have no bill. We will likely move this to "pro bono" on my dime if conflagration breaks out. If you get a benefactor to pay, we can revisit[.]

> I have to open a file for ethical and malpractice reasons – so no worries.

{¶ 3} That same date, Middleman signed the engagement letter with a handwritten notation that states, "[with] the exceptions noted in email dated 1/27/23." According to Middleman, there was an understanding that the engagement was to be a pro bono matter or a friends-and-family matter and that

she would only be responsible for out-of-pocket expenses during the course of WTP's representation.

{¶ 4} The Oklahoma case was resolved later in 2023. Ray Middleman and the other attorneys who were associated with the matter have since disassociated from WTP.

{¶ 5} On August 9, 2024, WTP filed a complaint against Middleman that raised a claim for breach of contract. Among other allegations, WTP alleged that it rendered legal services to Middleman pursuant to an engagement agreement and that Middleman failed to remit payment for amounts due in the amount of $40,117.16. Attached to the complaint is a copy of the January 27, 2023 engagement letter that was signed by Middleman, along with a copy of WTP's standard terms of engagement.

{¶ 6} During the course of the proceedings, the parties filed cross-motions for summary judgment. Ultimately, on April 23, 2025, the trial court granted WTP's motion and denied Middleman's motion. In granting judgment in WTP's favor, the trial court found in pertinent part as follows:

> IT IS UNDISPUTED THAT DEFENDANT RETAINED PLAINTIFF LAW FIRM TO REPRESENT HER IN AN INTELLECTUAL PROPERTY DISPUTE WITH HER FORMER EMPLOYER ("THE LITIGATION MATTER"). IT IS FURTHER UNDISPUTED THAT DEFENDANT'S BROTHER, ATTORNEY RAY MIDDLEMAN, A FORMER EQUITY PARTNER OF WHITEFORD, FACILITATED THIS RETENTION. DEFENDANT ENTERED INTO AN ENGAGEMENT AGREEMENT WITH WHITEFORD. SEE PLTF EX. E. THE ENGAGEMENT AGREEMENT LISTS "STANDARD HOURLY BILLING RATES" DEFENDANT WAS REQUIRED TO PAY FOR THE WHITEFORD ATTORNEYS AND PARALEGALS. ID. THE

ENGAGEMENT AGREEMENT INCORPORATES BY REFERENCE WHITEFORD'S STANDARD TERMS OF ENGAGEMENT. THE STANDARD TERMS EXPRESSLY PROVIDE THAT MIDDLEMAN WOULD BE "RESPONSIBLE FOR PAYING THE ACTUAL FEES AND EXPENSES INCURRED FOR [DEFENDANT'S] MATTERS" AND THAT "INVOICES ARE DUE WITHIN THIRTY (30) DAYS OF RECEIPT." PLTF EX. F, STANDARD TERMS 1-2.

IT IS LIKEWISE UNCONTESTED THAT WHITEFORD PERFORMED LEGAL SERVICES FOR DEFENDANT IN THE UNDERLYING LITIGATION MATTER BETWEEN JANUARY 27, 2023 AND JUNE 12, 2023. WHITEFORD SENT MIDDLEMAN VARIOUS INVOICES, REFLECTING A TOTAL 116 HOURS OF TIME BILLED IN THE LITIGATION MATTER. IN RESPONSE TO THESE INVOICES, MIDDLEMAN MADE FIVE SEPARATE PAYMENTS TO WHITEFORD. PLTF EX. A. PLAINTIFF'S ACCOUNT RECONCILIATION DEMONSTRATES THAT MIDDLEMAN HAS FAILED TO PAY WHITEFORD THE OUTSTANDING BALANCE OF $40,117.16. SEE PLTF'S EXS. A AND A-2. IN RESPONSE, DEFENDANT ASSERTS A THEORY OF AN AGREEMENT THAT THE LITIGATION MATTER WOULD BE PRO BONO OR FRIENDS AND FAMILY BASED UPON A JANUARY 27, 2023 EMAIL EXCHANGE BETWEEN HER AND HER BROTHER.

DR. MIDDLEMAN NOTATED THE FOLLOWING ALONG WITH HER SIGNATURE ON THE ENGAGEMENT AGREEMENT: "W/ THE EXCEPTIONS NOTED IN EMAIL DATED 1/27/2023." THIS NOTATION WAS NOT ACKNOWLEDGED OR COUNTERSIGNED BY ANY REPRESENTATIVE OF WHITEFORD. ADDITIONALLY, THE STANDARD TERMS CONTAINS AN "ENTIRE AGREEMENT" CLAUSE. MOREOVER, NOWHERE IN THE 1/27/2023 EMAIL EXCHANGE DID MIDDLEMAN REQUEST PRO BONO REPRESENTATION; INSTEAD, SHE REQUESTED AN ESTIMATE OF THE COSTS ASSOCIATED WITH THE REPRESENTATION. SEE EX. C. IN RESPONSE, RAY MIDDLEMAN STATED THAT HE WOULD "LIKELY MOVE THIS TO 'PRO BONO' ON [HIS] DIME IF CONFLAGRATION BREAKS OUT. IF YOU GET A BENEFACTOR TO PAY WE CAN REVISIT..." SEE ID. THERE WERE NO PROMISSORY OR BINDING STATEMENTS MADE, ONLY A SUGGESTION THAT THE MATTER MAY EVENTUALLY BE CONVERTED TO "PRO BONO."

BASED UPON THE FOREGOING, JUDGMENT IS RENDERED IN FAVOR OF PLAINTIFF WHITEFORD, TAYLOR, & PRESTON, LLP

AND AGAINST DEFENDANT AMY MIDDLEMAN IN THE AMOUNT OF $40,117.16, SUBJECT TO 8% STATUTORY INTEREST FROM DATE OF JUDGMENT, PLUS COURT COSTS, FOR WHICH EXECUTION MAY ISSUE.

{¶ 7} On appeal, Middleman challenges the trial court's decision to grant summary judgment in favor of WTP. Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12.

{¶ 8} As an initial matter, we must caution litigants about presenting arguments to this court that were never raised in the trial court. As this court has previously stated, "[A]ppellate review of the granting of summary judgment under Civ.R. 56 is limited to the arguments presented in the motions for summary judgment filed with the trial court. New arguments cannot be presented for the first time in an appeal." *Cerreta Interiors, LLC v. New Moon, LLC*, 2025-Ohio-4847, ¶ 9 (8th Dist.), citing *Deutsche Bank Natl. Trust Co. v. Stone*, 2021-Ohio-3007, ¶ 12 (10th Dist.); *see also Michael v. Miller*, 2025-Ohio-271, ¶ 26 (8th Dist.). Moreover, "[a]lthough we must review a summary judgment decision de novo, 'that standard does not supersede our settled practice of not addressing issues raised for the first time on appeal.'" *Davis v. Diley Ridge Med. Ctr.*, 2025-Ohio-

1940, ¶ 9 (10th Dist.), quoting *Stone* at ¶ 12.  Thus, we will not consider a question not presented, considered, or decided by the lower court.  *See Kalish v. Trans World Airlines, Inc.*, 50 Ohio St.2d 73, 79 (1977).  We limit our review accordingly.

{¶ 9} Under her first assignment of error, Middleman claims the trial court "erred by interpreting the Engagement Agreement without determining which state's law applies to the contract at issue."  However, in the underlying proceedings, Middleman did not raise a choice-of-law argument or claim that Ohio law should not be applied when interpreting the engagement agreement in this matter.  In fact, Middleman cited Ohio law in her briefing before the trial court.  As such, Middleman's failure to raise the issue before the trial court waives the issue for appellate purposes.  *See Miller* at ¶ 26, citing *Wells Fargo Bank, N.A. v. Lundeen*, 2020-Ohio-28, ¶ 14 (8th Dist.).  Moreover, because the issue was not presented or decided in the trial court, we will not address it on appeal.  *See Kalish* at 79.

{¶ 10} Under her second assignment of error, Middleman argues that the trial court "erred by granting summary judgment in favor of [WTP], without oral argument, and without construing the evidence presented in favor of the nonmoving party, despite recognizing that a question of fact existed as to whether the parties' January 27, 2023 email was incorporated into the Engagement Agreement and that the terms of the email were, themselves, ambiguous."  To the

extent that Middleman makes arguments under Oklahoma law, those arguments were not presented to the trial court and will not be addressed herein.

{¶ 11} In moving for summary judgment on its breach-of-contract claim, WTP argued that this case involves "a straightforward dispute regarding [Middleman's] nonpayment of fees owed to Whiteford for legal services rendered" in a litigation matter pursuant to the parties' engagement agreement. The engagement letter refers to the nature of services, billing policies and standard terms of engagement, standard hourly billing rates, and other terms. The standard terms of engagement state that the "Standard Terms of Engagement and any accompanying engagement letter together comprise the entire agreement between you and WTP with respect to our engagement . . . ."

{¶ 12} Middleman asserts that the engagement letter includes her handwritten notation that integrates the January 27, 2023 email exchange with her brother, Ray Middleman, who was acting on behalf of WTP as an equity partner of the firm, and she asserts that she executed the engagement letter with the understanding that the engagement was to be billed as a pro bono matter or a friends-and-family matter. Middleman argues that the trial court erred by failing to integrate the January 27, 2023 email exchange into the terms of the parties' agreement.

{¶ 13} The trial court observed that the handwritten notation "was not acknowledged or countersigned by any representative of Whiteford." Yet, it appears that WTP accepted the terms of the engagement agreement with the

included handwritten notation and incorporated emails by rendering performance. As the trial court recognized, it is "uncontested that Whiteford performed legal services for [Middleman] in the underlying litigation matter . . . ." Additionally, the record shows that WTP acknowledged the engagement agreement attached to the complaint, which includes the handwritten notation, is a true and correct copy of the engagement agreement. Nonetheless, WTP claims that the January 27, 2023 emails did not transform the litigation matter into a pro bono engagement.

{¶ 14} "The purpose of contract construction is to effectuate the intent of the parties." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987), citing *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. Generally, courts "presume that the intent of the parties to a contract resides in the language they choose to employ in the agreement." *Shifrin v. Forest City Ents.*, 64 Ohio St.3d 635, 638 (1992), citing *Kelly* at paragraph one of the syllabus. "'When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.'" *Tera, L.L.C. v. Rice Drilling D, L.L.C.*, 2024-Ohio-1945, ¶ 11, quoting *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 2011-Ohio-2720, ¶ 37. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." (Cleaned up.) *Id.* at ¶ 11. "'Extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning.'" *Id.* at ¶ 12, quoting *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313-

314 (1996). "This is particularly true 'when circumstances surrounding an agreement invest the language of the contract with a special meaning, [because] extrinsic evidence can be considered in an effort to give effect to the parties' intention.'" *Lutz v. Chesapeake Appalachia, L.L.C.*, 2016-Ohio-7549, ¶ 9, quoting *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 2011-Ohio-4189, ¶ 29. "[W]here an ambiguity resides in the language of the contract, or the language of the contract is unclear, determining the intent of the parties becomes a question of fact for the trier of fact at trial." *Van Beusecum v. Continental Builders, Inc.*, 2004-Ohio-7261, ¶ 59 (5th Dist.), citing *Valmac Industries, Inc. v. Ecotech Machiner, Inc.*, 137 Ohio App.3d 408, 413 (2d Dist. 2000).

{¶ 15} In this case, the trial court considered the January 27, 2023 email exchange and found that "nowhere in [that] email exchange did Middleman request pro-bono representation; instead she requested an estimate of the costs associated with the representation." The trial court further determined from the email exchange that there was "only a suggestion that the matter may eventually be converted to 'pro bono.'"

{¶ 16} However, when construing the contract as a whole, we find the language of the parties' agreement is unclear. Middleman's handwritten notation on the engagement letter incorporated "the exceptions" noted in the January 27, 2023 email exchange into the parties' agreement. In that email exchange, after being sent the engagement letter from her brother, Middleman asked "how much this will end up costing[,]" and she requested estimates so she could "let you know

if I can afford to move forward any further than what we have already done." She asked for a current bill and indicated that she needed "to limit my spending given pending personal costs with moving." Ray Middleman responded that "[it is] not going to cost you more than the FedEx charges at this point and you have no bill." He further represented that the matter would "likely" be moved to pro bono "on my dime if conflagration breaks out." The term "likely" is generally defined as "having a high probability of occurring or being true: very probable[.]" *Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/likely. The term must be read in context. Ray Middleman further indicated that if Middleman were to "get a benefactor to pay, we can revisit" and that he had "to open a file for ethical reasons—so no worries."

{¶ 17} Upon our review, we find the language of the parties' agreement is unclear and it appears that the circumstances surrounding the agreement, which involved a sister requesting legal help from her brother who was then an equity partner in the firm, invest the language of the contract with a special meaning such that extrinsic evidence can be considered in an effort to give effect to the parties' intention. Middleman and WTP both refer to extrinsic evidence in support of their respective positions.

{¶ 18} Middleman points to deposition testimony from Ray Middleman, her own deposition testimony, as well as other deposition testimony in this case to support her assertions that "[t]he expectation at all times was that I would not pay for services," that the matter would be a "pro-bono" matter or a "friends and

family" matter for multiple reasons, and that her understanding was that she would likely pay "out-of-pocket charges" related to the matter, "such as FedEx charges." Middleman argues the trial court erred by failing to consider the deposition testimony in the matter, and she raises other arguments.

{¶ 19} WTP argues that the litigation matter did not qualify as a pro bono matter under WTP's own internal policies, that the litigation matter was opened as a standard billable matter, that monthly invoices were sent to Middleman, and that Middleman's first payment exceeded the total amount of expenses in an invoice that was sent. WTP also provided evidence in support of its assertions that it invested 116 hours of time in Middleman's litigation matter, that Middleman made five separate payments totaling $5,100, and that she refused to pay what it asserts is an outstanding balance of $40,117.16. WTP refers to other evidence in the matter and raises other arguments.

{¶ 20} Ultimately, we do not find this to be a straightforward case or a clear agreement as either party suggests. In this matter, we are not able to discern the intent of the parties from the language of the agreement itself, and determining the parties' intent under the engagement agreement is a question for the trier of fact at trial. Upon our de novo review, we find triable issues of fact remain and viewing the evidence most strongly in favor of Middleman, reasonable minds could reach a conclusion other than in favor of the moving party. We conclude that WTP is not entitled to summary judgment, and we are not persuaded by WTP's arguments otherwise. The second assignment of error is sustained.

**{¶ 21}** The trial court's judgment is reversed, and the case is remanded for the case to proceed to trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
EMANUELLA D. GROVES, J., CONCUR