[Cite as *Michael v. Stanard*, 2025-Ohio-741.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

KAREN A. MICHAEL,                    :

    Plaintiff-Appellant,          :

                              No. 113916

    v.                             :

MARGARET E. STANARD, ET AL.,         :

    Defendants-Appellees.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 6, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-989333

---

### *Appearances:*

ZAGRANS LAW FIRM LLC and Eric H. Zagrans, *for appellant*.

GALLAGHER SHARP LLP, Timothy T. Brick, and Maia E. Jerin, *for appellees* Margaret E. Stanard and Stanard & Corsi Co., LPA.

REMINGER CO., L.P.A., Brianna M. Prislipsky, Andrew J. Dorman, Holly Marie Wilson, and Melany A. Kotlarek, *for appellees* Stephen E.S. Daray and Rosenthal Lane LLC.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Plaintiff-appellant, Karen Michael ("Michael"), appeals the trial court's judgment granting defendants-appellees', Margaret Stanard, Stanard & Corsi Co., L.P.A., Stephen Daray, and Rosenthal Lane LLC's (collectively "appellees"), motions for judgment on the pleadings. After a review of the facts and the law, we affirm.

{¶ 2} This legal-malpractice action arises out of underlying divorce proceedings between Michael and her former husband, David Miller ("Miller"). Stanard represented Michael in the divorce and, in 2013, filed the underlying divorce complaint. Stanard represented Michael until she withdrew as counsel in September 2016. Daray represented Michael in the divorce action from January through September 2016, when he withdrew from the representation. Thus, appellees' representation of Michael ended no later than September 2016.

{¶ 3} In January 2015, Michael and Miller's final decree of divorce was entered into, incorporating the parties' separation agreement. Pursuant to the divorce decree, Miller was ordered to do the following: (1) pay spousal-support to Michael in the amount of $15,000 per month for 240 months, from December 2014 through November 2034 for a total of $3.6 million ("monthly payments" or "current support obligation"); (2) pay additional spousal-support to Michael in the amount of $18,750 per quarter for twenty-four quarters for a total of $450,000 ("quarterly payments" or "future support obligation") beginning December 31, 2034 through September 30, 2040; and (3) secure his spousal-support and other payment obligations to Michael by assigning stock holdings and ownership interests in Ram

Sensors, Inc. ("RAM") to Michael and by executing a cognovit note and pledging his stock as collateral. To effectuate the agreement, on January 22, 2015, Miller executed a cognovit promissory note, promising to pay Michael the sum of $450,000, an amount which corresponded to his future support obligation. Also on January 22, 2015, Miller and Michael signed a pledge agreement, under which Miller pledged his equity interest in RAM to Michael. Soon thereafter, Miller fell behind on his monthly spousal-support payments.

{¶ 4} Michael's claims against appellees center on the last requirement in the divorce decree — that Miller execute a cognovit note and pledge his stock as collateral for his spousal-support obligations.

{¶ 5} On September 23, 2016, one of Michael's other attorneys (who is not involved in this case) recorded a Uniform Commercial Code ("UCC") financing statement with the Ohio Secretary of State. This execution of the note and pledge agreement satisfied Miller's obligations under the divorce decree with respect to his future support obligation. Michael now alleges that appellees breached their duties of care by failing to secure a similar promissory note with respect to Miller's current support obligation. Michael further alleges that appellees breached their duties of care by failing to record a UCC financing statement to secure Miller's stock in RAM as collateral and to record a perfected lien. According to Michael, this breach occurred sometime between December 2015 and September 2016, but she did not become aware of the breach until December 2022.

{¶ 6} In November 2015, Miller and Michael's son, Cody Miller ("Cody"), filed suit against Miller alleging he misappropriated funds from RAM ("Cody/Miller lawsuit"). Cody and Miller eventually entered into a settlement agreement, which required Miller to transfer his RAM stock to Cody, subject to Michael's lien securing Miller's spousal-support obligation.

{¶ 7} In May 2017, Michael filed a motion in the divorce case to have Miller's corporate stock transferred to her, as well as a motion for declaratory judgment, which requested a determination that Miller had assigned his interest in his stocks to her. Michael withdrew the motion in February 2018 and filed a motion to intervene and vacate the judgment in the Cody – Miller lawsuit. In that motion, Michael argued that the RAM stock secured all of Miller's support obligations, both current and future. The trial court denied the motion, which this court upheld, finding that Michael had no interest in RAM stock relative to the current support obligation. *See Miller v. Miller*, 2019-Ohio-1886, ¶ 36 (8th Dist.) (holding that Michael's interest in the action is as a lienholder and her interest in the stock becomes due in 2034) and *Michael v. Miller*, 2021-Ohio-307, ¶ 48 (8th Dist.) (finding that the record did not support a finding that the parties had executed a note and pledge to cover the monthly payments).

{¶ 8} In January 2019, Michael filed a complaint for declaratory judgment in the divorce case, seeking the following declarations: (1) Miller's ownership of shares in RAM Sensors was to be ordered assigned and pledged to Michael and secured all of Miller's obligations under the divorce decree, including the monthly

and quarterly payments; (2) Michael's security and lien over Miller's RAM stock was not limited to the future support obligations but secured all his obligations to her; (3) Michael's rights and interest in the RAM stock was marital property; (4) Miller and Cody would convey to Michael the shares of RAM stock Cody had acquired from Miller; and (5) Cody would be required to pay to Michael the monthly support payments due from Miller since April 13, 2017. Michael also requested attorney's fees.

{¶ 9} Two things then happened. The trial court determined that Miller was required to execute a cognovit note and stock pledge relevant to his current support obligation and the domestic relations court held that Michael had an equitable lien on Miller's shares to secure those monthly support payments.

{¶ 10} Miller appealed, and this court found the parties' intent was to secure both the quarterly and monthly spousal-support payments. *Miller*, 2021-Ohio-307, at ¶ 45 (8th Dist.).

{¶ 11} Miller appealed to the Ohio Supreme Court. The Court noted that there was no dispute that Michael had a lien on RAM stock Miller transferred to Cody to secure Miller's future support obligation. *Michael v. Miller*, 2022-Ohio-4543, ¶ 19. The issue, the Court determined, was whether Michael had an equitable lien on Miller's RAM stock securing his obligation to pay Miller's current support obligation. *Id.*

{¶ 12} The Court found that this court erred in failing to consider the cognovit note, stock-pledge agreement, and UCC statement as evidence of the

parties' intent to secure only the future support obligation. *Id.* at ¶ 29. Thus, the Court concluded, this court erred in finding that Michael had an equitable lien on RAM stock securing Miller's current support obligation. *Id.* at ¶ 34.

{¶ 13} On November 30, 2023, Michael filed the complaint in the instant case alleging appellees were negligent in their representation of her. Appellees subsequently filed separate motions for judgment on the pleadings.

{¶ 14} On April 26, 2024, the trial court issued its judgment finding, in relevant part:

> Defendants Rosenthal Lane, LLC and Stephen E.S. Daray's motion for judgment on the pleadings, filed 04/11/2024, is granted. Defendants Margaret E. Stanard, Esq. and Stanard & Corsi, Co., LPA's renewed motion for judgment on the pleadings, filed 04/10/2024, is granted. This Court finds that Plaintiff's claims are time barred under the Statute of Repose and Statute of Limitations, R.C. 2305.117, R.C. 2305.11.

{¶ 15} This appeal follows.

## Assignments of Error

> I. The trial court erred by granting judgment on the pleadings, pursuant to Civ.R. 12(C), in favor of Defendants-Appellees on the ground that Plaintiff-Appellant's claims of legal-malpractice were time-barred by the four-year Statute of Repose for legal-malpractice, R.C. 2305.117(B), when that Statute is not retroactively applicable to negligent acts and omissions that occurred many years before it was enacted.

> II. The trial court erred by granting judgment on the pleadings, pursuant to Civ.R. 12(C), in favor of Defendants-Appellees on the additional ground that Plaintiff-Appellant's claims of legal-malpractice were time-barred by the one-year Statute of Limitations for legal-malpractice, R.C. 2305.11(A), when such claims arose less than one year before this action was filed.

{¶ 16} We discuss the second assignment of error first because it is dispositive of this appeal. In the second assignment of error, Michael argues that the trial court erred in granting judgment on the pleadings on the ground that her claims were barred by the statute of limitations.

{¶ 17} Civ.R. 12(C) allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay the trial." Like a Civ.R. 12(B)(6) motion to dismiss, the factual allegations of the complaint are taken as true; however, unsupported legal conclusions are insufficient. *Tate v. Garfield Hts.*, 2013-Ohio-2204, ¶ 9 (8th Dist.). An appellate court reviews a motion for judgment on the pleadings under a de novo standard. *Drozeck v. Lawyer Title Ins. Corp.*, 140 Ohio App.3d 816, 820 (8th Dist. 2000). The determination of the date of accrual of a cause of action for legal-malpractice is also a question of law that is reviewed de novo on appeal. *Cicchini v. Streza*, 2005-Ohio-1492, ¶ 17 (5th Dist.); *Bowman v. Tyack*, 2009-Ohio-1331 (10th Dist.). *See also Purushealth, L.L.C. v. Day Ketterer, L.L.P.*, 2019-Ohio-2002, ¶ 36 (8th Dist.) (finding that legal-malpractice claims were untimely as a matter of law).

{¶ 18} In Ohio, legal-malpractice actions are subject to the one-year statute of limitations set forth in R.C. 2305.11(A), which bars malpractice claims filed more than one year after the cause of action accrues. A legal-malpractice claim accrues, and the statute begins to run, upon the later of "a cognizable event whereby the client discovers or should have discovered that his [or her] injury was related to his [or her] attorney's act or non-act and the client is put on notice of a need to pursue his

[or her] possible remedies against the attorney," or "when the attorney-client relationship for that particular transaction or undertaking terminates." *Zimmie v. Calfee*, 43 Ohio St.3d 54, 58 (1989). Judgment on the pleadings is "warranted if [a] defendant raised a statute of limitations defense and the pleadings show the action was filed after expiration of the statute of limitations period." *Kalski v. Bartimole*, 2020-Ohio-4137, ¶ 26 (8th Dist.). Thus, to avoid the statute of limitations, Michael's malpractice claim must have accrued no earlier than November 30, 2022 — one year prior to commencement of this action.

{¶ 19} The parties do not dispute that appellee's representation of Michael terminated no later than September 2016. Michael filed her complaint for legal-malpractice on November 30, 2023. Thus, the issue is whether a cognizable event occurred more than one year before Michael filed suit.

{¶ 20} A cognizable event is one that puts a reasonable person on notice of the need for further inquiry as to whether a mistake in lawyering may have occurred. *Zimmie* at 57. The "knowledge of a potential problem starts the statute to run, even when one does not know all the details." *Halliwell v. Bruner*, 2000 Ohio App. LEXIS 5896, *17 (8th Dist. Dec. 14, 2000). Moreover, the statute of limitations begins to run even if the damages are not completely ascertainable. *Zimmie* at 59 (finding that an injured person does not have to be aware of the full extent of the injury before there is a cognizable event — "[i]t is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that a questionable legal practice may have occurred").

{¶ 21} Along that same rationale, "constructive knowledge of the facts rather than actual knowledge of their legal significance" starts the statute of limitations to run. *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992), citing *McGee v. Weinberg*, 97 Cal.App.3d 798 (1979). In *Flowers*, the Ohio Supreme Court noted that "a plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Flowers* at *id.*, citing *Allenius v. Thomas*, 42 Ohio St.3d 131 (1989). "Rather, the 'cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her [or his] claim in order to pursue her [or his] remedies." *Flowers* at *id.*, quoting *Allenius* at 133-134.

{¶ 22} Michael argues that the one-year statute of limitations for legal-malpractice claims did not begin to run until the Ohio Supreme Court's December 2022 decision finding that Michael did not have an equitable lien on the RAM stock securing Miller's current spousal-support obligation. *See Michael*, 2022-Ohio-4543. To support her position, Michael relies on *Zimmie* and this court's decision in *Hilario v. Taft, Stettinius & Hollister*, 2011-Ohio-1742 (8th Dist.).

{¶ 23} In *Zimmie*, the plaintiff filed a legal-malpractice claim after a trial court invalidated an antenuptial agreement that the defendant law firm had drafted and prepared. The trial court invalidated the agreement in 1981, and the plaintiff filed the malpractice claim in 1985. The plaintiff argued that the accrual date was in 1984, the date the Ohio Supreme Court held that the antenuptial agreement was invalid, not the date the trial court invalidated the agreement. The law firm moved for summary judgment arguing that the statute of limitations barred the plaintiff's

legal-malpractice claim. The trial court granted the motion, and the court of appeals affirmed. The Ohio Supreme Court agreed, finding that the cognizable event was the trial court's 1981 invalidation of the antenuptial agreement, not the Ohio Supreme Court's 1984 decision that the antenuptial agreement was invalid. *Id.* at 57.

{¶ 24} *Zimmie* does not support Michael's contention. The *Zimmie* Court upheld the trial court's decision to grant summary judgment, finding that the date of the trial court's decision invalidating the agreement was the cognizable event. Michael argues that the trial court's decision in this case did not put her on notice because both the trial court and this court found in her favor, unlike in *Zimmie* where the trial court sided against the plaintiff.

{¶ 25} As noted in *Zimmie,* a plaintiff is not entitled to exhaust all appellate remedies before the statute of limitations commences. *Id.* at 58-59. Moreover, a cognizable event is not dependent upon a judicial determination. *See Cotterman v. Arnebeck,* 2012-Ohio-4302 (10th Dist.). Again, when considering the legal-malpractice statute of limitations, it is the underlying factual circumstances, rather than the decisions of courts, which ultimately provide notice of potential malpractice to a putative plaintiff. *See Szabo v. Goetsch,* 2007-Ohio-1147 (8th Dist.).

{¶ 26} In *Hilario,* 2011-Ohio-1742 (8th Dist.), the plaintiff, a professional athlete from Brazil, appealed the trial court's grant of summary judgment on statute of limitations ground. This court reversed the grant of summary judgment, finding that the plaintiff's claim for relief accrued when he received advice about the

contested document, a personal services agreement ("PSA"), from his new attorneys. This court found that the plaintiff, whose first language was Portuguese and who required a translator, was not or should have not been aware that his former attorney improperly prepared the PSA when he initially received the document from the attorney. Nor did a cognizable event occur, this court concluded, when one of plaintiff's employees contacted the plaintiff to criticize the PSA.

{¶ 27} Here, however, Michael was heavily involved in litigation regarding the RAM stock from 2017 to the present time; these two cases are simply not comparable.

{¶ 28} We now turn to cases relied on by appellees. In *Szabo*, 2007-Ohio-1147, the plaintiff argued on appeal that he was not put on notice of his former attorney's possible malpractice until the court of appeals issued its decision affirming summary judgment in the underlying matter. This court rejected that argument and found that the cognizable event occurred, at the latest, more than one year before the plaintiff filed his legal-malpractice suit. *Id.* at ¶ 13. In reaching this conclusion, this court reasoned that, "[i]n determining the cognizable event, 'the focus should be on what the client was aware of and not an extrinsic judicial determination.'" *Id.* at ¶ 14, quoting *Vagianos v. Halpern*, 2000 Ohio App. LEXIS 5856, * 7 (8th Dist. Dec. 14, 2000). As such, it was the underlying factual circumstances, rather than a court decision, that put the plaintiff on notice of a putative legal-malpractice claim.

{¶ 29} In *Smith v. Barclay*, 2012-Ohio-5086 (10th Dist.), the plaintiff sued his former attorney alleging the attorney committed legal-malpractice when the attorney missed the statute of limitations on the plaintiff's underlying medical-malpractice claim. In the underlying case, the defendant filed for summary judgment on September 10, 2008, arguing that the plaintiff's claim was time barred. The trial court dismissed the plaintiff's medical-malpractice claim nearly a year later, on August 21, 2009, agreeing that his claim was time-barred. In the resulting legal-malpractice case, the plaintiff argued that "the accrual date for the statute of limitations should be August 21, 2009, the date of the trial court decision," rather than the date the defendant first raised the statute-of-limitations defense. *Id.* at ¶ 12. The Tenth District Court of Appeals rejected this argument, finding that the statute of limitations began to run when the defendant filed his motion for summary judgment and that "[n]either the procedural maneuvering that followed, nor the [c]ourt's decision on that motion, erases or overrides the information conveyed therein." *Id.* at ¶ 14.

{¶ 30} In *McDade v. Spencer*, 75 Ohio App.3d 639, 641 (10th Dist. 1991), the Tenth District Court of Appeals rejected an argument that a complaint for legal-malpractice was timely filed. The plaintiff had argued that he did not discover the malpractice until the domestic relations court found him in contempt of the settlement agreement in his divorce action. The defendant argued that, at the latest, the cognizable event occurred when the plaintiff hired his present attorney. The defendant pointed out that the plaintiff was aware of the terms of the settlement

agreement when it was filed and raised no objections. Moreover, the plaintiff was cognizant of the fact that contempt motions had been filed against him for failing to comply with the terms of the separation agreement.

{¶ 31} The appellate court upheld summary judgment stating:

[T]he focus of the inquiry should be on the point of discovery, that is, awareness, that the client discovered or should have discovered that he [or she] has been injured by the attorney's act or omission. The focus should be on what the client was aware of and not an extrinsic judicial determination.

*Id.* at 642-643.

{¶ 32} Michael alleges that she did not discover her injury, i.e., the loss of her equitable lien on Miller's RAM stock, until the Supreme Court of Ohio issued its decision in *Michael*, 2022-Ohio-4543. The scope of Michael's interest in RAM stock, however, and whether she had a lien arising from Miller's current support obligation, had been previously litigated and disputed, putting her on notice of a potential issue.

{¶ 33} In May 2017, Michael filed a motion to transfer Miller's interest in RAM stock to her because he failed to make his current support payments. Cody intervened to challenge Michael's claims. Michael eventually dismissed her post-decree motions, but, at that time, she was aware that Cody disputed her purported secured interest in RAM relative to Miller's current support obligation. In March 2018, Michael unsuccessfully attempted to intervene in the Cody – Miller lawsuit, arguing that she had an interest in the RAM stock for Miller's current and future support obligations. In January 2019, Michael filed a declaratory judgment action

against Miller and Cody, again arguing she had an interest in the RAM stock to secure Miller's current support obligation.

{¶ 34} In May 2019, this court released its opinion in *Miller*, 2019-Ohio-1886 (8th Dist.), upholding the trial court's denial of Michael's motion to intervene in the Cody – Miller lawsuit. Michael argued on appeal that Miller and their son Cody challenged her interest RAM stock relative to Miller's "current and future" support obligations. *Id.* at ¶ 31. In affirming the trial court's judgment, this court noted that

> Karen's interest in David's share of the RAM Sensors stock . . . is a lien that becomes due in the future; it is not a present interest in ownership of the stock . . . . The evidence does not support Karen's argument that documents were executed entitling her to immediate transfer of David's stock for satisfaction of David's current support indebtedness, i.e., a new stock agreement, cognovit note, or UCC statement.

*Id.* at ¶ 32.

{¶ 35} This court reiterated that Michael's interest in the stock is not due until 2034. *Id.* at ¶ 36.

{¶ 36} In *Michael*, 2021-Ohio-307 (8th Dist.), this court expressly stated that "[t]he record does not support a finding that a note and pledge were also executed to cover the monthly payments." *Id.* at ¶ 48. Although this court concluded that the parties' intent was to secure the current and future support payments, this court noted that, in actuality, the documents limited the lien to the future support payments. The dissenting judge noted that if Michael "believed herself entitled to a $4 million lien against David's shares of RAM Sensors based on the terms of the separation agreement, the UCC Statement would have been the mechanism to

secure her rights, not the seeking of an equitable lien in excess of that which she claimed in the UCC Statement." *Id.* at ¶ 70 (S. Gallagher, J., dissenting).

{¶ 37} Again, Michael contends that appellees breached the standard of care when they failed to secure her monthly support interest in Miller's RAM stock. But given that Miller's future support obligation was perfected but not his current support obligation, Michael should have become aware of the alleged malpractice several years prior to her filing her complaint for legal-malpractice.

{¶ 38} Again, based on the allegations in Michael's complaint, she was made aware of the failure to perfect the lien in 2017, when she sought to intervene in the suit between her former husband and their son, and in 2018 when the trial court denied her motion to intervene in the Cody – Miller lawsuit, and in 2019, when Michael filed her declaratory judgment action against Miller concerning the nature of her interest in his stocks and this court expressly stated that she did not have a present interest in the stock. *Miller*, 2019-Ohio-1886, ¶ 32, 36 (8th Dist.). At each of these points in time, Michael was aware of the dispute over her interest in the RAM stock, which is directly linked to her allegation that her attorneys failed to obtain the requisite lien and UCC filing.

{¶ 39} The foregoing were all cognizable events that occurred more than a year before Michael filed her November 30, 2023 complaint for legal-malpractice. Michael's argument that the cognizable event did not occur until the adverse decision of the Ohio Supreme Court in December 2022 is not persuasive. The scope of Michael's interest in RAM had been disputed and challenged since at least 2017

and continually through 2021.  In light of the multiple cognizable events, the date the Supreme Court of Ohio eventually put the issue to rest is of no consequence.

{¶ 40} Therefore, we find that the trial court did not err when it granted appellees' motions for judgment on the pleadings.

{¶ 41} Accordingly, the second assignment of error is overruled.

{¶ 42} In the first assignment of error, Michael argues that the trial court erred in granting judgment on the pleadings on the ground that her claims were barred by the statute of repose.  Because we find that Michael's claim is time-barred, this assignment of error is moot.  *See* App.R. 12(A)(1)(c).

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
DEENA R. CALABRESE, J., CONCUR